In the

# United States Court of Appeals

## For the Seventh Circuit

No. 05-4292

JEHAD WAZEEN JARAD,

*Petitioner,*

*v.*

ALBERTO R. GONZALES, Attorney General
of the United States,

*Respondent.*

Petition for Review of an Order
of the Board of Immigration Appeals

ARGUED AUGUST 9, 2006—DECIDED AUGUST 24, 2006

Before POSNER, COFFEY, and EASTERBROOK, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Jehad Wazeen Jarad entered this country without inspection—that is, by stealth—in 1991. After being caught, he was placed in removal proceedings (then called deportation; we use the current terminology). At a hearing on December 31, 1991, he conceded that he had no right to be in the United States and requested the privilege of voluntary departure at his own expense. The immigration judge granted that request and gave Jarad until February 28, 1992, to leave; the judge also entered an order of removal to take effect if Jarad remained.

Notwithstanding both his promise and the valid order of removal (which he did not appeal), Jarad stayed in the United States. During the coming decade he married and had three children, all born in the United States and therefore citizens of this nation. After his wife became a naturalized U.S. citizen, Jarad filed a motion to reopen the immigration case so that he could apply for adjustment of status, see 8 U.S.C. §1255(i), on the basis of marriage to a citizen. The immigration judge denied this application in 2004 as a matter of discretion—for §1255(i) creates an opportunity rather than an entitlement.

The IJ concluded that Jarad meets the eligibility requirements (a visa is immediately available and Jarad has not been convicted of a felony) but that it would be inequitable to allow him to gain by defying an order of removal. The IJ was disappointed by Jarad's decision to renege on his promise to depart voluntarily—even though voluntary departure would have allowed him to obtain a visa in Israel and come back lawfully. (Voluntary departure enables an alien to avoid some of the disabilities, such as a ban on reentry for an extended period, that accompany removal. 8 U.S.C. §1229c. See generally *Alimi v. Ashcroft*, 391 F.3d 888 (7th Cir. 2004).)

Moreover, the IJ concluded, an alien should not be allowed to obtain a substantial benefit by the length of an illegal stay (13 years by the time of the hearing on his motion to reopen) when other, law-abiding aliens must wait abroad until visas become available. All of the favorable equities that Jarad had accumulated—family, employment, community ties—are attributable to his unlawful actions. Jarad essentially argued that the longer he defied the 1991 removal order, the greater his entitlement to remain in the United States. As the IJ saw things, among those eligible for the benefits of §1255(i) an alien who violates a removal order has a lower equitable standing than one who seeks

adjustment of status before being ordered removed. The Board of Immigration Appeals affirmed without opinion.

Jarad's petition for judicial review encounters an obstacle in 8 U.S.C. §1252(a)(2)(B):

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review (i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

Jarad seeks relief under §1255, yet "no court shall have jurisdiction to review" an administrative decision "regarding the granting of relief under section . . . 1255". To get anywhere, Jarad must rely on the proviso: "except as provided in subparagraph (D)". That subparagraph reads:

> Nothing in subparagraph (B) or (C), or in any other provision of this Act (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

Our authority thus is limited to "constitutional claims or questions of law". There is no serious claim under the

Constitution (Jarad's contention that each of the IJ's supposed mistakes violates the due process clause does not require analysis), and it is hard to see any "question of law", because Jarad does not contend that the IJ contradicted §1255(i). He does not maintain, for example, that the agency refused to consider his application in the teeth of statutory language making him eligible. The IJ ruled in his favor on all issues of eligibility, and if the IJ made a poor judgment in exercising discretion that's not a legal error for purposes of §1252(a)(2)(D). See *Sokolov v. Gonzales*, 442 F.3d 566, 569 (7th Cir. 2006). An IJ who thinks that an alien should not benefit from deceit, or disobedience to a lawful order of removal, does not violate any statute or regulation. See *Alsagladi v. Gonzales*, 450 F.3d 700 (7th Cir. 2006).

Whether the IJ balanced the equities soundly is a debatable question, but that subject is not within this court's purview. If an ill-considered exercise of discretion were treated as an error of law, then §1252(a)(2)(B) would not serve any function—for "abuse of discretion" is the standard of review in cases under the Administrative Procedure Act, where judicial review of agency action reaches its fullest extent. Unless §1252(a)(2)(B) is to be treated as so much hot air, it must bar a claim that the agency acted imprudently when acting under one of the listed statutes. See *Cevilla v. Gonzales*, 446 F.3d 658, 661 (7th Cir. 2006).

The immigration judge cited the administrative decision that Jarad accuses him of ignoring: *Matter of Arai*, 13 I&N Dec. 494 (1970). We may assume that administrative decisions (no less than statutes and regulations) can establish "law" for purposes of §1252(a)(2)(D). Cf. *Billeke-Tolosa v. Ashcroft*, 385 F.3d 708, 710-13 (6th Cir. 2004); *Hernandez v. Ashcroft*, 345 F.3d 824, 846 (9th Cir. 2003). (Both of these decisions predate the Real ID Act of 2005, which added §1252(a)(2)(D) to the immigration code. The parties have not joined issue on the question whether "law"

in the 2005 statute includes statements in administrative opinions, which is why we assume the point without reaching a conclusion. It should be confronted squarely by counsel when it matters to some future case.) *Arai* does not give Jarad any purchase. It establishes a balancing approach, see generally *Patel v. INS*, 738 F.2d 239, 242-43 (7th Cir. 1984), and balancing is exactly what the IJ did in his case. Jarad observes that the BIA did not give any weight to the fact that Arai had failed to depart as promised. True enough, but neither did the Board say that *no* weight could be assigned; it just didn't discuss the subject. Arai's overstay was less than one tenth of Jarad's. His application for adjustment of status had been based on a labor certification: he had skills that were in high demand. And he acquired those skills (the favorable equities) *before* entering the United States. The Board's exercise of discretion in Arai's favor does not compel, as a matter of law, a decision favorable to Jarad. Section 1252(a)(2)(D) therefore does not assist him.

In an effort to fortify his contention that the IJ abused his discretion, Jarad maintains that the IJ failed to explore the question whether he had understood the significance of the opportunity to depart voluntarily in 1992. When counsel tried to explore the question at the hearing in 2004, the IJ cut off the questioning and stated that he remembered that the significance of voluntary departure had been explained. Jarad contends that it is unlikely that an immigration judge would have remembered something that happened 13 year ago; instead of relying on memory, Jarad insists, the IJ should have obtained a transcript of the 1991 hearing.

All of this is a sidelight. Jarad's lawyer tries to make it appear more significant by insisting that in 2004 the IJ denied his application because of a mistaken belief that Jarad knowingly had "violated the voluntary-departure order" of 1991. Actually, counsel now insists, Jarad had not understood the legal significance of voluntary departure

and had been told by "friends" that he did not have to depart. Why any alien would take the word of "friends" over that of an immigration judge is a mystery. At all events, there was no "voluntary-departure order" to violate. The IJ made only one "order" in 1991—an order of removal. Voluntary departure is an opportunity extended in lieu of removal, not an order; an option differs from a command. Jarad promised to depart and did not keep his word, but that lapse did not "violate" any command or obligation. The order he violated was not a promise but the IJ's removal order, which is not voluntary in any respect—and which Jarad has been flouting for 14 years and counting.

Now it is possible to imagine a strictly legal argument that, whenever an IJ relies on events at an earlier hearing, he must obtain a transcript to guard against the risk of error. Memory often plays tricks, and the fact that an IJ (or anyone else) *thinks* he remembers something that occurred more than a decade earlier may be one of those tricks. Certitude (which the IJ evinced) often is unwarranted. People may remember what they want to remember, whether it happened or not, and the lack of correlation between the strength and the accuracy of one's recollection is one of the most important findings of the psychology of memory. See Daniel L. Schacter, *The Seven Sins of Memory (How the Mind Forgets and Remembers)* 116-17, 138-60 (2001); Elizabeth F. Loftus, *Eyewitness Testimony* 100-01 (1996). A transcript does not make this error. (Note, by the way, that Jarad proposed at the 2004 hearing to rely on his own memory of decade-old events, and the testimony of an interested person may well be even less reliable than the IJ's recollection. Jarad was more likely to remember, for the hearing mattered more to his life than the IJ's, but Jarad also had a greater personal stake and thus a greater likelihood that his memory would conform to his self-interest rather than actual events.)

Before the Board of Immigration Appeals, however, Jarad did not argue that a rule of law makes a transcript mandatory. Nor did Jarad's lawyer ask the IJ to have the 1991 proceedings (which the parties assume were recorded) transcribed, or ask the BIA to do so, or even ask the agency to put the recording in the record. All that he *did* argue is that by relying on his memory the IJ had abused his discretion. Such an argument may or may not persuade the Board, but in court it is a dud; it is the very sort of contention that §1252(a)(2)(B) interdicts. The strictly legal argument that a transcript always is required was not presented to the Board and so had not been exhausted, see 8 U.S.C. §1252(d)(1), and has not been presented to us either—for, to repeat, Jarad uses this episode only as an illustration of the ways in which the IJ supposedly misused discretion.

Finally, Jarad contends that the Board committed an error of law by assigning the administrative appeal to a single member (under its streamlining procedure) rather than a panel of three members. It is not clear how this could be thought a legal transgression, as opposed to yet another exercise of discretion. See *Kambolli v. Gonzales*, 449 F.3d 454 (2d Cir. 2006). This court has never decided whether the decision to assign one member or three is reviewable in principle, because it just does not matter. Streamlining is supposed to be used for insubstantial appeals. An alien who says that his appeal should have been heard by three members must mean either (a) that the appeal was non-frivolous but still not strong enough to support reversal, or (b) that the appeal established a prejudicial error by the immigration judge. If proposition (a) is true, then a remand with instructions to convene a three-member panel would be pointless, for the alien would be doomed to lose again. If proposition (b) is true, then a remand with instructions to rehear the appeal before three members would be a waste of time, for the BIA would be bound to send the case back to

the IJ—and the court can do that directly. It therefore "makes no practical difference whether the BIA properly or improperly streamlined review." *Hamdan v. Gonzales*, 425 F.3d 1051, 1058 (7th Cir. 2005), quoting from *Georgis v. Ashcroft*, 328 F.3d 962, 967 (7th Cir. 2003). Harmless errors do not support relief, so we need not now (or ever) decide whether one member or three is the right number to resolve an administrative appeal.

The petition for review is dismissed for want of jurisdiction.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*