# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 06-2932 & 06-3318

ABDUL GHAFFAR MOHAMMAD HUSSAIN,

*Petitioner*,

*v.*

PETER D. KEISLER, Acting Attorney General
of the United States,

*Respondent.*

———————

Petitions for Review of an Order of
the Board of Immigration Appeals.
No. A 76 773 859

———————

ARGUED MARCH 29, 2007—DECIDED OCTOBER 24, 2007

———————

Before FLAUM, EVANS, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Abdul Hussain, a native and citizen of Pakistan, contends that he did not receive a fair hearing because the immigration judge denied him the opportunity to file an application for asylum. We reject this argument, as Hussain in fact filed an asylum application but later withdrew it in exchange for a longer period of voluntary departure. Hussain also argues that his obligation to register pursuant to the National Security Entry-Exit Registration System led to the initiation of removal proceedings against him and violated his right to equal protection of the laws. We lack jurisdiction

to consider his argument that the government improperly commenced the removal proceedings against him. And even if the removal proceedings commenced before he registered, the fact remains that the immigration judge found him removable because he overstayed his visa. Therefore, we deny the petition for review.

## I. BACKGROUND

Abdul Hussain entered the United States on a six-month visitor visa in June 2001. He remained in the United States after his visa expired. In late 2002, the United States government instituted the National Security Entry-Exit Registration System ("NSEERS"), a program that required males over the age of sixteen from certain countries, including Pakistan, to register with the Department of Homeland Security ("DHS"). Hussain voluntarily appeared at a DHS office in April 2003, where he gave information about his whereabouts in accordance with the NSEERS program. That same day, he alleges, he was placed in removal proceedings.

The government charged Hussain with removability as an alien who had remained in the United States longer than permitted. The first hearing in Hussain's removal proceedings took place on August 21, 2003. There, Hussain's counsel asked for a continuance to allow Hussain time to consider the relief he would seek. In response, the immigration judge stated that any application for asylum should have been filed no later than June 8, 2002, as asylum applications must normally be filed within one year of an alien's arrival in the United States. *See* 8 U.S.C. § 1158(a)(2)(B). The immigration judge told Hussain that if he chose to file for asylum, he might be time-barred from doing so unless he could show changed circumstances, that the time bar did not apply to requests for withholding of removal or relief under the

Convention Against Torture ("CAT"), and that Hussain might still be eligible for voluntary departure. The immigration judge then advised Hussain's counsel that if Hussain intended to apply for withholding of removal or CAT protection, he expected Hussain to have a prepared form ready for filing at the next hearing. Finally, the immigration judge stated that at the next hearing, counsel could advise the court whether Hussain was eligible for any other relief.

The next hearing occurred on October 23, 2003. Hussain was represented by the same counsel. Through counsel, Hussain conceded he was removable as charged. The immigration judge then asked Hussain what relief he sought. After Hussain's counsel explained that he planned to file an asylum application within thirty days, the immigration judge responded that he would consider the asylum claim only if Hussain could show a change of circumstances or exceptional circumstances justifying his failure to timely file the claim. Hussain's counsel responded, "All right." The immigration judge then asked how much time Hussain wanted to file the application. After requesting thirty days, the immigration judge agreed and stated, "And on the application please strike the word asylum and enter this phrase, put CAT, C-A-T, Convention Against Torture." Hussain's counsel responded, "All right. I certainly will."

On November 24, 2003, Hussain filed an application for asylum, withholding of removal, and CAT protection. At the next hearing, Hussain's counsel stated that Hussain had agreed to withdraw his applications for relief in exchange for a voluntary departure period of 120 days instead of 60 days. Hussain told the immigration judge that he wanted to take the extended voluntary departure "if that is the only option." The immigration judge responded, "Well, you have to tell me. Are you willing, are you in agreement with your attorney that you wish to

apply for voluntary departure 120 days?" Hussain answered, "Okay," and his counsel also stated that he recommended that Hussain accept the longer voluntary departure period. The immigration judge then issued an oral decision accepting Hussain's withdrawal of his requests for relief and granting a voluntary departure period of 120 days.

With new counsel, Hussain filed an appeal from the immigration judge's decision, claiming that the immigration judge had barred him from making an asylum claim. He also filed a motion to reopen in light of a then-pending class action lawsuit on behalf of aliens who had registered under the NSEERS. The Bureau of Immigration Appeals ("BIA") rejected Hussain's arguments, and Hussain subsequently filed a petition for review with this court.

## II. ANALYSIS

### A. Asylum Claim

Hussain first maintains that he did not receive a fundamentally fair immigration hearing. Although Hussain styles his claim as a violation of due process, we have said that "[t]here is no need to invoke the Constitution when the immigration statute itself guarantees a fair hearing." *Kadia v. Gonzales*, 2007 WL 2566015, at *6 (7th Cir. Sept. 7, 2007) (citing 8 U.S.C. § 1229a(b)(4)(B)) ("the alien shall have a reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's own behalf, and to cross-examine witnesses provided by the Government"); *see also Rehman v. Gonzales*, 441 F.3d 506, 508-09 (7th Cir. 2006). An alien must demonstrate prejudice to succeed on his claim that he did not receive a fair hearing. *See Rehman*, 441 F.3d at 509.

Hussain's principal argument is that the immigration judge barred him from filing an asylum application. At bottom, this claim fails because the record is clear that Hussain filed an asylum application. He later withdrew his application in exchange for a longer voluntary departure period, but that was a choice he made with counsel present and after the immigration judge questioned him to ensure he wished to do so. *Cf. United States v. Carroll*, 412 F.3d 787, 792 (7th Cir. 2005) (upholding voluntarily-entered guilty plea).

In any event, the immigration judge was not wrong to warn Hussain that he could only consider an asylum application from him under limited circumstances. In general, an alien may not file an application for asylum unless he demonstrates "by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). By the time the government charged Hussain with removability, more than a year had passed since he entered the United States. And he has never disputed that he filed his asylum application more than one year after his arrival.

The one-year time bar does not apply, however, if the alien demonstrates either "the existence of changed circumstances which materially affect the applicant's eligibility for asylum" or extraordinary circumstances relating to the delay in filing. 8 U.S.C. § 1158(a)(2)(D). Consistent with this law, the immigration judge reminded Hussain on multiple occasions that he would not consider Hussain's untimely asylum application unless Hussain showed changed circumstances or some other justification for the belated filing. For instance, at the August 21, 2003, initial hearing, the immigration judge first stated that any application for asylum should have been filed by June 8, 2002. He then instructed Hussain and his counsel that: (1) if Hussain chose to file an ap-

plication for asylum, he might be time-barred unless he could show changed circumstances; (2) the time bar did not apply to requests for withholding of removal or relief under the Convention Against Torture; and (3) Hussain could still be eligible for voluntary departure. These directives conform to the statute's mandate that only changed or extraordinary circumstances allow an immigration judge to consider an untimely asylum application. *See* 8 U.S.C. §§ 1158(a)(2)(B), (D); *see also* 8 C.F.R. § 208.4.

At the next hearing approximately two months later, Hussain conceded he was removable as charged. After Hussain's counsel explained that he planned to file an application for asylum within thirty days, the immigration judge stated that he would consider the asylum claim only if Hussain could demonstrate changed circumstances or exceptional circumstances justifying his failure to file the claim within one year. Once again, this directive was consistent with the law, and the immigration judge did nothing improper in giving it. Hussain also takes issue with the immigration judge's request that counsel strike the word "asylum" from the application he planned to file and to write instead "CAT, C-A-T, Convention Against Torture." In light of the immigration judge's statement moments earlier that he would entertain an asylum application if Hussain showed changed or exceptional circumstances, the same sentiment the judge had expressed throughout the proceedings, and Hussain's failure throughout the proceedings to suggest that he had any basis for showing changed or exceptional circumstances, we do not take this statement as anything more than a suggestion that counsel write "Convention Against Torture" on the application if that was the relief Hussain decided to request.

Notably, Hussain's counsel at the time did not consider Hussain to be "prohibited" from filing an asylum applica-

tion. Hussain ultimately filed an application for asylum and other relief on November 24, 2003, and he did not strike out the word "asylum" on the application. At the next hearing, the immigration judge accepted the application for asylum and withholding of removal. At that time, however, Hussain withdrew his requests for relief in return for a longer voluntary departure period.

At each hearing before Hussain filed his asylum application, the immigration judge, consistent with the law, advised Hussain and his counsel that he would consider Hussain's asylum application if Hussain could establish changed or exceptional circumstances justifying the filing. Hussain, however, never attempted to do so. Instead, he withdrew his applications for relief in return for an extended period of voluntary departure. Hussain, therefore, received the opportunity to file for asylum and a full and fair hearing. Finally, because Hussain voluntarily withdrew his application for asylum, there is no merit to Hussain's argument that the immigration judge should have explained in his decision why Hussain was not granted asylum.

### B.  Equal Protection Challenge

Hussain also maintains that his obligation to register with immigration authorities pursuant to the National Security Entry-Exit Registration System violated his right to equal protection because it targeted aliens from Arab and Muslim countries. *See Ramos v. Gonzales*, 414 F.3d 800, 806 (7th Cir. 2005) (stating aliens are entitled to equal protection of the law) (citing *Yick Wo v. Hopkins*, 118 U.S. 356, 359 (1886)). Before it was discontinued, the NSEERS program required males aged sixteen years or older, from certain countries only, to register with the government. The final rule enacting the program stated:

> Recent terrorist attacks have underscored the need to broaden the registration requirements for nonimmigrant aliens from certain designated countries . . . whose presence in the United States requires closer monitoring, to ensure that they provide specific information at regular intervals to ensure their compliance with the terms of their visas and admission, and to ensure that they depart the United States at the end of their authorized stay.

67 Fed. Reg. 52,284. The NSEERS program required that Hussain, an adult male from Pakistan, register.

Hussain argues in his brief that he was placed in removal proceedings "only after he registered with the NSEERS program." Because the NSEERS requirements applied only to persons from certain countries, including Pakistan, Hussain maintains that the program violated equal protection. Our decisions in *Hadayat v. Gonzales*, 458 F.3d 659 (7th Cir. 2006), and *Igbal Ali v. Gonzales*, 2007 WL 2684825 (7th Cir. Sept. 14, 2007) instruct that we lack jurisdiction to consider this claim.

Like Hussain, the petitioner in *Hadayat* argued that his obligation to register with NSEERS meant that he had been unconstitutionally targeted for removal based on his ethnicity and religion. *See Hadayat*, 458 F.3d at 664-65. We concluded that 8 U.S.C. § 1252(g) deprived us of jurisdiction to consider this challenge. *Id.* This section provides:

> Except as provided in this section and notwithstanding any other provision of law . . ., no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

Because the petitioner contended that the government had commenced removal proceedings against him as a result of his compliance with the NSEERS program, we concluded that we lacked jurisdiction to review the equal protection challenge. *Hadayat*, 458 F.3d at 665. In *Igbal Ali*, we relied on *Hadayat* to conclude that we lacked jurisdiction to consider a similar challenge. *See Igbal Ali*, 2007 WL 2684825, at *6.

These decisions strongly suggest that we lack jurisdiction to consider Hussain's equal protection challenge as well. Hussain, however, maintains that notwithstanding our precedent, the REAL ID Act's amendments to 8 U.S.C. § 1252 allow us to consider his constitutional challenge to the commencement of removal proceedings against him. We did not have reason to consider this argument in our previous cases, but we will do so now.

With the passage of the REAL ID Act, § 1252(a)(2)(D) provides:

> Nothing in subparagraph (B) or (C), or in any other provision of this Act (*other than this section*) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

(Emphasis added.) Hussain asks that we read this provision as allowing our review of his constitutional claim—a review that § 1252(g) would otherwise forbid. We decline to adopt this reading.

By its plain language, § 1252(a)(2)(D)'s authorization to review certain constitutional claims or questions of law does not apply to § 1252(g). Section 1252(a)(2)(D) plainly states that other limitations on judicial review in "this section"—that is, section 1252—still apply. *See Hamilton*

*v. Gonzales*, 485 F.3d 564, 567 (10th Cir. 2007); *see also Ballesteros v. Ashcroft*, 452 F.3d 1153, 1157 (10th Cir. 2006) ("Consequently, unless another subparagraph of § 1252 precludes our review of Mr. Ballesteros' claims that raise either constitutional or legal questions, we also have jurisdiction to review those claims."); *cf. Dababneh v. Gonzales*, 471 F.3d 806, 810 n.2 (7th Cir. 2006) (stating petitioner's claim was not one challenging commencement of proceedings subject to § 1252(g), but was rather a challenge to whether notice was defective and was thus reviewable as pure question of law). Hussain's interpretation would have us disregard the words "other than this section" in § 1252(a)(2)(D), and we will not do that here. *See Duncan v. Walker,* 533 U.S. 167, 174 (2001) (courts should "'give effect, if possible, to every clause and word of a statute'") (quoting *United States v. Menasche*, 348 U.S. 528, 538-39 (1955)).

The Fifth Circuit's decision in *Flores-Ledezma v. Gonzales*, 415 F.3d 375, 380 (5th Cir. 2005), does not change our conclusion. There, the court reasoned that the petitioner was "not simply challenging the discretionary decision of the Attorney General to commence removal proceedings or execute removal orders, but rather he challenge[d] the constitutionality of the statutory scheme allowing for such discretion." *Id.* at 374. As a result, § 1252(g) did not deprive the court of jurisdiction to review the petitioner's claim. *Id.* Here, in contrast, Hussain is not challenging the Attorney General's *authority* to commence proceedings. Rather, his argument challenges the *decision* to commence proceedings against him. Section 1252(g) precludes our review of such a claim. (We noted in *Hadayat* that there was a "narrow exception for the 'rare case in which the alleged basis of discrimination is so outrageous'" that judicial review is appropriate, but we concluded that the petitioner's challenge to the NSEERS program did not rise to that level. *Hadayat*, 458 F.3d at

665 (quoting *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 491 (1999)). We will not revisit that reasoning here).

One note remains. Although Hussain asserts that the government initiated removal proceedings only after he registered pursuant to the NSEERS program, it is not clear on this record whether that is in fact what happened. A removal proceeding to determine the deportability or inadmissibility of an alien such as Hussain "commences" by the filing of a notice to appear with the immigration court. 8 C.F.R. § 1239.1. Here, the government issued Hussain a notice to appear on March 4, 2003 and filed it with the immigration court a week later. According to Hussain's motion to remand filed with the BIA, it was not until April 23, 2003, that Hussain voluntarily appeared to provide information pursuant to NSEERS. If these dates are accurate, the government would have "commence[d] proceedings," in the sense that term is used in § 1252(g), against Hussain well before he registered pursuant to NSEERS. As a result, § 1252(g) would not deprive us of jurisdiction to consider his equal protection claim. Nonetheless, Hussain's equal protection challenge to NSEERS would not help him in this proceeding. Assuming that the sequence set forth above is correct, well before he registered in compliance with the NSEERS program, the government charged Hussain with removability because he remained in the United States longer than his visa allowed. And on that basis, the immigration judge found him removable. His registration (and his national origin) had no bearing on this conclusion. *See Zerrei v. Gonzales*, 471 F.3d 342, 348 (2d Cir. 2006) ("even if Zerrei could show that the NSEERS program . . . violated the equal protection guarantee of the Fifth Amendment, the fact would remain that Zerrei has overstayed his visa and has no right to remain in this country"); *Kandamar v. Gonzales*, 464 F.3d 65, 74 (1st Cir. 2006) ("the decision to

remove Petitioner was based on the fact that he had overstayed his visa, not based on his national origin"); *Ahmed v. Gonzales*, 447 F.3d 433, 440 (5th Cir. 2006) (petitioner's registration in NSEERS had "nothing to do with" immigration judge's decision to find him removable).

## III.  CONCLUSION

For the foregoing reasons, Hussain's petition for review is DENIED.

A true Copy:

    Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*