# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 07-1138

MOHAMMAD A. KHAN,

*Petitioner,*

*v.*

MICHAEL B. MUKASEY, Attorney General
of the United States,[1]

*Respondent.*

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A76-720-273

ARGUED NOVEMBER 30, 2007—DECIDED FEBRUARY 25, 2008

Before BAUER, RIPPLE, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* Mohammad Azam Khan, a
native and citizen of Pakistan, petitions for review of a
final order of removal issued by an Immigration Judge (IJ)
and affirmed by the Board of Immigration Appeals (BIA).
The IJ found Khan removable because of his bank-fraud
conviction, and then denied Khan's request for a discre-
tionary waiver of inadmissibility, *see* 8 U.S.C. § 1182(h),
and his application for an adjustment of status under

---

[1] Attorney General Michael B. Mukasey is substituted pursuant
to Fed. R. App. P. 43(c).

the Immigration and Nationality Act, *see* 8 U.S.C. § 1255. Because Khan's petition does not raise any viable constitutional claim or question of law, we conclude that we lack jurisdiction.

## I. HISTORY

Khan first entered the United States on a non-immigrant student visa in September 1991. In 1997, Khan and his college roommate knowingly executed a bank-fraud scheme; Khan was convicted after pleading guilty to one count of violating 18 U.S.C. § 1344, an offense punishable by up to thirty years' imprisonment. Khan was sentenced to six months' imprisonment with credit for time served, and to five years' probation.

In July 1998, the government initiated removal proceedings against Khan because, among other things, he had been convicted of bank fraud—a crime of moral turpitude for which a sentence of one year or longer might be imposed—and he had committed the bank fraud within five years after his admission to the country. *See* 8 U.S.C. § 1227(a)(2)(A)(i). Khan retained the services of Opeolu Banwo, an attorney licensed in New York, to assist him during these removal proceedings.

During a series of telephonic hearings before the IJ from late 1998 until October 1999, Khan, through his counsel Banwo, admitted all of the government's allegations and conceded his removability. Khan expressed his intention to apply for asylum because he claimed that his freedom would be threatened if he were deported to Pakistan. *See* 8 U.S.C. § 1231(b)(3)(A). At the end of the October 1999 hearing, the IJ scheduled another telephonic hearing for 1:00 p.m. on February 10, 2000, to consider Khan's forthcoming application for asylum.

Shortly after the October 1999 hearing, Khan filed an application for asylum in which he claimed that he was

a homosexual and would be persecuted in Pakistan because "according to Islamic laws in Pakistan, there is zero tolerance for homosexuality." Khan claims that he filed this application because Banwo told him that it was the only way that Khan could avoid deportation. Khan signed the application form, certifying under penalty of perjury that all information provided in the application was accurate.

Between October 1999 and February 10, 2000, a notice was mailed to Banwo that the time of Khan's February 10 hearing had been changed from 1:00 p.m. to 10:30 a.m. However, Khan never received notice of this time change. On the morning of February 10, Khan did not arrive for his telephonic hearing. Instead, Banwo appeared on behalf of Khan and moved to withdraw as counsel because, Banwo claimed, he had been unable to contact Khan for several months. As a result of Khan's failure to appear, the IJ granted Banwo's motion to withdraw and ordered Khan removed *in absentia*. *See* 8 U.S.C. § 1229a(b)(5)(A).

In late July 2000, Khan filed a letter with the immigration court, which the IJ treated as a *pro se* motion to reopen his case. Khan's letter stated that he failed to appear at the February 10 hearing because he lacked notice of the time change. The letter claimed that in addition to being Banwo's client, Khan had been employed by Banwo in 1999; their employment relationship came to an abrupt and acrimonious end, which Khan insinuated, led Banwo to intentionally withhold the hearing time-change from him and to misrepresent to the court that Khan would not attend his removal hearing. Khan's letter also alleged that he was *not* a homosexual and had merely handwritten the asylum application as Banwo dictated it to him.

Shortly after filing this letter, Khan retained new counsel, Bart Chavez, who filed a motion notifying the

IJ that Khan would be pursuing an alternative ground for reopening his case based on an ineffective-assistance-of-counsel claim against Banwo. *See Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988). Chavez also sent a letter to Banwo, advising him of Khan's allegations against him. Banwo responded to Chavez by denying all of Khan's allegations. Banwo adamantly denied Khan's suggestion that Banwo had told Khan what to write in his asylum petition and enclosed Khan's handwritten application and supporting affidavits from family members as evidence that Khan had determined what to write on the application without any assistance from Banwo.

In November 2000, the IJ granted Khan's motion to reopen his case. In doing so, the IJ did not rule on Khan's ineffective-assistance-of-counsel argument because Khan's motion did not comply with the formal requirements for making such an argument. *See id.* Nonetheless, the IJ found that Khan did not have sufficient notice of the February 10 hearing time-change, and granted his motion to reopen.

After the case was reopened, Khan filed a new application for asylum. This time, Khan claimed asylum based upon political persecution—the new application contained no reference to homosexuality. Khan's second application also indicated that Khan had married Sandy Amith, a United States citizen, in early January 2001. In late July 2001, Sandy Amith-Khan filed an I-130 petition that sought to have Khan reclassified as a permanent resident alien based upon their marriage. *See, e.g.*, *Lino v. Gonzales*, 467 F.3d 1077, 1078 (7th Cir. 2006). The IJ continued the case while the I-130 petition was pending, and in April 2002, Amith-Khan's I-130 petition was approved. Based on this approval, the couple filed an I-485 application to adjust Khan's status to permanent resident alien in August 2002. *See* 8 U.S.C. § 1255(i).

At a telephonic hearing in April 2003, Khan withdrew both asylum applications and opted to solely pursue his I-485 application for an adjustment of status along with a discretionary waiver of inadmissibility—this waiver was needed because of his bank-fraud conviction. *See* 8 U.S.C. § 1182(h). After Khan withdrew his asylum claims, the government responded by arguing that he was statutorily ineligible for an adjustment of status because he had filed a frivolous asylum application. *See* 8 U.S.C. § 1158(d)(6). At a telephonic hearing in December 2003, the IJ rejected the government's argument and ruled that Khan would not be automatically barred from pursuing an adjustment of status because he had not been given the requisite formal warnings regarding filing a frivolous asylum application. *See* 8 U.S.C. § 1158(d)(4). The IJ explained that he would still consider whether Khan had filed a petition based upon false statements when deciding whether to issue the waiver of inadmissibility—the IJ stated that this "would be a highly-significant negative discretionary factor" in his determination of whether to afford relief.

In late September 2004, the IJ held an evidentiary hearing by televideo. At this hearing, Khan testified about his bank-fraud conviction and his adverse relationship with Banwo. During this testimony, Khan reiterated that Banwo had directed him to claim that he was a homosexual on his asylum application, that Banwo had dictated the substance of the form to him as he handwrote it, and that Banwo had repeatedly told him that this was the only way to prevent his deportation. Khan also testified about his relationships with his wife and her autistic daughter, Nicole.

After Khan testified, the IJ said to Chavez, "you are calling, then, respondent's spouse, is that correct?" Chavez responded, "Yes, that's correct, Your Honor, I'll bring her in the room." At this point, the IJ and the parties

engaged in an off-the-record discussion. After a few minutes, the IJ went back on the record and summarized the off-the-record conversation. The IJ explained that this conversation pertained to a letter from the New York Bar Association regarding whether it would discipline Banwo—Khan had filed a grievance against Banwo with the New York State Bar Association in late July 2003, to which the Bar Association had responded by stating that it would not investigate the complaint as a matter of policy because it had been lodged as a *Lozada* claim. *See* 19 I. & N. Dec. at 637. The IJ asked the parties, on the record, to consider how he should handle Khan's accusations against Banwo. The IJ then adjourned the hearing without any testimony from Amith-Khan, any indication of why she did not testify, or any objection from Chavez.

In May 2005, the IJ issued a decision denying Khan a waiver of inadmissibility and, consequently, an adjustment of status. The IJ reasoned that because Khan had been convicted of bank fraud, he could only obtain the discretionary waiver if his deportation would cause "extreme hardship" to his wife and her daughter. The IJ first noted that the record was not sufficiently developed on the issue of extreme hardship because Amith-Khan never testified. The IJ then stated that even had Khan proven extreme hardship, he would have still denied the waiver as a matter of discretion because Khan had been convicted of bank fraud and had filed a false asylum application claiming that he was a homosexual. The IJ concluded that these negative factors offset any equities that favored granting him a waiver.

Khan then appealed the IJ's decision to the BIA. In December 2006, the BIA issued an order, which stated that it could not find any sufficient reason to reverse the IJ and concluded that the IJ had reasonably exercised his discretion. The BIA accordingly dismissed Khan's ap-

peal. We will therefore examine the IJ's written opinion as supplemented by the BIA. *See, e.g.*, *Bosede v. Mukasey*, No. 06-1625, slip. op. at 5 (7th Cir. Jan. 14, 2008).

## II. ANALYSIS

In his petition for review, Khan argues that the IJ failed to maintain a complete record of the removal proceedings in violation of his constitutional due-process rights. Specifically, Khan claims the record is deficient because it does not account for the absence of his wife's testimony. Khan asserts that a gap in the record resulted from the IJ engaging in off-the-record dialogue with the parties just after counsel indicated that Amith-Khan would testify. Khan contends that this off-the-record conversation was a procedural error, and he cites a memorandum from the Chief Immigration Judge advising an IJ to limit off-the-record dialogue as support for his argument. Khan also argues that the IJ improperly balanced the equities in favor of denying Khan a waiver of inadmissibility.

Appellate jurisdiction over a petition for review of an order of removal has been narrowly circumscribed by Congress, which has chosen to delegate many immigration decisions to the Attorney General. *See* 8 U.S.C. § 1252. We may review a discretionary decision—such as the denial of a request for an adjustment of status or a denial of a waiver of inadmissibility—only where the petition raises "constitutional claims or questions of law." *See* 8 U.S.C. § 1252(a)(2); *see also Klementanovsky v. Gonzales*, 501 F.3d 788, 791 (7th Cir. 2007); *Jarad v. Gonzales*, 461 F.3d 867, 869 (7th Cir. 2006). For instance, we have held that we lack jurisdiction to review the Attorney General's exercise of discretion when denying a waiver of inadmissibility; however, we retain jurisdiction to examine whether the correct legal standard was applied to

an alien's claim. *Ali v. Achim*, 468 F.3d 462, 465 (7th Cir. 2006).

Here, Khan makes no argument that the IJ applied the inappropriate legal standard in denying his waiver of inadmissibility. Instead, he contends that the IJ improperly balanced the equities in deciding whether to grant a waiver. By asking us to review the IJ's balancing of the equities in deciding whether to grant him a waiver, Khan is really asking us to review the merits of the IJ's discretionary determination. We have no jurisdiction to do so and therefore will not conduct an analysis of this argument. *See* 8 U.S.C. § 1252(a)(2)(B)(i); *see also Iqbal Ali v. Gonzales*, 502 F.3d 659, 664 (7th Cir. 2007); *Vasile v. Gonzales*, 417 F.3d 766, 768 (7th Cir. 2005).

The only argument Khan advances that could conceivably raise a "constitutional claim or question of law" is his contention that the IJ violated his procedural due-process rights by failing to maintain a complete record of the removal proceedings. We have repeatedly reminded aliens claiming constitutional violations that immigration proceedings that meet statutory and regulatory standards comport with due process, and, as such, aliens are better-served by arguing instead that immigration proceedings infringed the statutory and regulatory right to a reasonable opportunity to present evidence. *See, e.g.*, *Mohammad Hussain v. Keisler*, 505 F.3d 779, 781 (7th Cir. 2007); *Kadia v. Gonzales*, 501 F.3d 817, 824 (7th Cir. 2007); *Alimi v. Gonzales*, 489 F.3d 829, 834 (7th Cir. 2007); *see also* 8 U.S.C. § 1229a(b)(4); 8 C.F.R. § 1240.1(c).

Nevertheless, Khan has has presented a "flabby constitutional argument" in lieu of arguing that his statutory or regulatory right was violated. *See Rehman v. Gonzales*, 441 F.3d 506, 509 (7th Cir. 2006). While an alien has a Fifth Amendment right to due process in immigration proceedings, *see Giday v. Gonzales,* 434 F.3d 543, 547 (7th

Cir. 2006) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)), it is well-established that a party complaining of a due-process violation must assert a liberty interest in order to maintain his due-process claim, *see Cevilla v. Gonzales*, 446 F.3d 658, 662 (7th Cir. 2006). As a result, we have repeatedly held that "an alien's right to due process does not extend to proceedings that provide only such discretionary relief" because an appeal to discretion is not a substantive entitlement. *Id.* at 662; *Hamdan v. Gonzales*, 425 F.3d 1051, 1060-61 (7th Cir. 2005); *see also Dave v. Ashcroft*, 363 F.3d 649, 653 (7th Cir. 2004). Here, Khan was required to pursue discretionary relief—the waiver of inadmissibility—in order to remain in the country. Therefore, Khan has not asserted any liberty interest, and as a result, he cannot maintain his constitutional due-process claim.

We will nevertheless evaluate Khan's "due process" argument as a claim that he did not receive a fair immigration hearing. *See, e.g.*, *Mohammad Hussain*, 505 F.3d at 781. But even if we resurrect Khan's argument by recasting it in statutory and regulatory terms, it still fails because Khan cannot prove that the IJ's failure to abide by an agency memorandum prejudiced him in any way. *See Apouviepseakoda v. Gonzales*, 475 F.3d 881, 885 (7th Cir. 2007) ("In order to succeed in challenging the legality of such a hearing, the alien must show not only that her 'reasonable opportunity' was denied, but also that she was prejudiced." (citing *Rehman*, 441 F.3d at 509)). We do not see how Khan can prove prejudice when the IJ stated that he would have denied Khan's waiver even had he received beneficial testimony from Khan's wife.

Moreover, Khan does not claim that the IJ denied him the right to present testimony on his behalf. In fact, Khan offered his own testimony and failed to object when the IJ closed the testimony in his case before his wife could testify. Even now, Khan does not claim that the IJ

failed to provide him an opportunity to present testimony, but only that the IJ maintained a record that failed to explain the absence of Amith-Khan's testimony. Whether or not violation of an internal agency memorandum could amount to a "question of law" within the umbrella of our jurisdiction—an issue we need not address—we are not convinced that the IJ's actions actually violated the memorandum's terms, which merely state that off-the-record dialogue is allowed but should be limited. Without apparent prejudice to Khan, his due-process claim fails.

## III. CONCLUSION

Because Khan has not raised any plausible constitutional claim or question of law, we DISMISS the petition for lack of jurisdiction.

USCA-02-C-0072—2-25-08