**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued May 1, 2013
Decided May 8, 2013

**Before**

WILLIAM J. BAUER, *Circuit Judge*

RICHARD A. POSNER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 12-3615

| | |
|---|---|
| ALBERTO DELGADO-RAMOS. | Petition for Review of an Order of the |
| *Petitioner*, | Board of Immigration Appeals. |
| | |
| *v.* | No. A089 275 801 |
| | |
| ERIC H. HOLDER, JR., | |
| Attorney General of the United States, | |
| *Respondent.* | |

**O R D E R**

Alberto Delgado-Ramos, a Mexican citizen, applied for cancellation of removal, which an immigration judge denied after refusing Delgado-Ramos's third request for a continuance. The Board of Immigration Appeals upheld the denial of relief, and Delgado-Ramos petitions for review. Delgado-Ramos seeks to characterize his removal proceedings as constitutionally and statutorily deficient. For the reasons that follow, we deny the petition in part and dismiss it in part for lack of jurisdiction.

Delgado-Ramos was brought illegally into the United States by his parents when he was 6 years old. He is now 28 and married to a U.S. citizen, Cathy Delgado, who is the

mother of his 6-year-old U.S.-citizen daughter and his 16-year-old U.S-citizen step-daughter.

In January 2009, a few days after Delgado-Ramos was arrested for possession of cocaine, the Department of Homeland Security served him with a notice to appear charging that he was never admitted or paroled into the country and thus subject to removal, *see* 8 U.S.C. § 1182(a)(6)(A)(I). Delgado-Ramos and his wife were living together before he was placed in removal proceedings, but they did not marry until four months later. (They wed one week after Cathy's divorce finalized.) She has since filed a Petition for Alien Relative seeking a visa on his behalf. That visa application is not relevant to the present case.

The immigration judge twice postponed the proceedings at Delgado-Ramos's request while he sought to resolve the pending drug charge. When Delgado-Ramos next appeared in June 2009, he conceded removability and said he would be applying for cancellation of removal. The IJ then scheduled the removal hearing for March 21, 2011, *21 months* in the future. The IJ set a deadline of 90 days for Delgado-Ramos to file a written application for cancellation of removal, and also reminded Delgado-Ramos that he could file supporting materials until 15 days before the hearing. At all of these appearances before the IJ in 2009, Delgado-Ramos was represented by attorney Frank Vasquez.

Delgado-Ramos met with attorney Vasquez on September 16, 2009, and the next day the lawyer filed the written application for cancellation of removal. In mid-February 2011, five weeks before the scheduled removal hearing, Vasquez moved to withdraw. He explained that, in the 17 months since their September 2009 meeting, his client had not returned the lawyer's phone calls (or even provided a working telephone number). Vasquez had written to Delgado-Ramos at his last known address in December 2010 and January 2011 reminding him of the impending hearing date. In those letters Vasquez recounted that he had been trying to contact Delgado-Ramos and warned that he would withdraw if Delgado-Ramos remained incommunicado since adequate representation would be impossible. Vasquez also said in his motion to withdraw that 10 days earlier he had finally received a phone call from Delgado-Ramos's wife, who scheduled an appointment for the couple to meet with the lawyer. But neither of them showed up, and thus the lawyer had filed this motion to withdraw as he warned Delgado-Ramos's wife he would do.

Delgado-Ramos did appear for the removal hearing but made no effort to explain his failure to communicate with attorney Vasquez. And neither did the IJ ask for an explanation or invite Delgado-Ramos to respond to counsel's statement that the petitioner was in the process of seeking a different lawyer. The IJ refused to let Vasquez withdraw,

reasoning that his client's failure to communicate was not an acceptable excuse for the lawyer to be excused from the case because, with today's technology, "the only way you cannot get in communication is if you choose not to be in communication." The IJ also characterized the lawyer's motion as untimely (apparently on the premise that Vasquez should have moved to withdraw sooner). Moreover, the IJ said, nothing had prevented Delgado-Ramos from retaining a different lawyer before the hearing, so he was not being deprived of his choice of counsel. And granting counsel's motion, the IJ added, effectively would mean granting a lengthy continuance, which the judge was unwilling to do.

Attorney Vasquez then moved for "a very short continuance" so that he could obtain "additional documents" from Delgado-Ramos to support his application for cancellation of removal. Vasquez specifically mentioned income tax returns and "school records" but, when pressed by the IJ, identified no others. The IJ denied this request with the explanation that Delgado-Ramos had not established good cause. The IJ reasoned that, in the months since Delgado-Ramos's last appearance in June 2009, he could have gathered and submitted any relevant information in support of his application.

Delgado-Ramos and his wife testified that she and their children will suffer exceptional and extremely unusual hardship if he is removed to Mexico. Delgado-Ramos is the primary wage earner, earning $750 per week, and Cathy earns $450 per week. His wife called him the "backbone" of their family and exclaimed that, without him, "our family would be completely destroyed." She explained that he had stepped in as a father figure and role model for her eldest daughter after the girl's natural father abandoned that role. Delgado-Ramos and his step-daughter have a great relationship, Cathy continued, and she would suffer emotionally without him. Cathy insisted, however, that she would not move their daughters to Mexico because living in such an unfamiliar environment would be too stressful for them. She added that her own health problems preclude her from moving to Mexico: She began experiencing anxiety around the time the removal proceedings began, and her doctors are testing her for fibromyalgia because she has persistent joint pain.

In denying Delgado-Ramos's request for cancellation of removal, the IJ found that the petitioner was of good moral character and had been continuously present in the United States. But Delgado-Ramos was not eligible for discretionary relief, the IJ reasoned, because he had not established that his U.S.-citizen wife and children will suffer exceptional and extremely unusual hardship if he is removed to Mexico, *see* 8 U.S.C. § 1229b(b)(1). The IJ explained that Delgado-Ramos's wife will not suffer if she moves with him to Mexico because he is capable of supporting the family in Mexico and her anxiety—seemingly brought on by the removal proceedings and, in the IJ's view,

ephemeral[1]—is not sufficiently serious to prevent her from living there. And, the IJ continued, Cathy will not suffer if she remains in the United States because she is not financially dependant on her husband and the separation "would be of her own choosing." Moreover, the IJ noted, she knew at the time she married Delgado-Ramos that he was in removal proceedings. The daughters too, the IJ said, were both in good mental and physical health and would be capable of adjusting to life and schooling in Mexico.

Delgado-Ramos, through new counsel, appealed to the Board. He argued that the IJ had denied him due process by refusing to let his lawyer withdraw and not granting a continuance so that he could prepare adequately for the removal hearing. (Delgado-Ramos did not specify what he would have done if given more time.) He also contended that the IJ's insistence that attorney Vasquez remain on the case violated his statutory right to have the lawyer of his choosing, *see* 8 U.S.C. § 1362. Moreover, Delgado-Ramos argued, the IJ had ignored the requirement that hardship factors be considered in the aggregate. Instead, Delgado-Ramos asserted, the IJ had given too much weight to his wife's decision to marry him knowing that he faced removal and too little weight to her medical conditions and the emotional devastation his departure would bring upon his children.

The Board upheld the denial of cancellation of removal. First, the Board concluded that forcing attorney Vasquez to remain on the case did not offend Delgado-Ramos's right to due process. Like the IJ, the Board seemed to think that granting the *lawyer's* motion to withdraw compelled the IJ to give Delgado-Ramos a lengthy continuance. Moving forward with the removal hearing with attorney Vasquez, the Board explained, had not caused any prejudice to Delgado-Ramos because he and his wife were able to testify about hardship to her and to their children. Moreover, Delgado-Ramos had not shown how granting the motion, i.e., giving Delgado-Ramos a continuance, would have changed the evidence presented to establish hardship. Second, the Board agreed with the IJ that Delgado-Ramos had been given more than enough time to prepare for the hearing. Finally, the Board concluded that Delgado-Ramos did not establish that his removal would cause exceptional and extremely unusual hardship to his wife and children. The BIA noted that both Delgado-Ramos and his wife had conceded that she and the daughters would remain in the United States. Although they would suffer some financial hardship, the BIA continued, his wife had not shown an inability to independently support herself and her daughters. Additionally, the children are in good health, and her anxiety is being treated.

---

[1]The transcript of the oral decision of the immigration judge reads "femoral," but we think that is a transcription error, and that the IJ meant to say "ephemeral."

Cumulatively, the Board concluded, these factors did not amount to the requisite level of hardship to warrant cancellation of removal.

Delgado-Ramos argues that the immigration courts denied him due process by not postponing his removal hearing and by "rendering a decision which did not apply the correct legal standard in considering the aggregate of petitioner's colorable and meritorious factors cumulatively." The Board issued its own opinion, rather than adopting or supplementing the IJ's, and so the Board's order is the one under the microscope. *See Borovsky v. Holder,* 612 F.3d 917, 920 (7th Cir. 2010); *Xiao v. Mukasey,* 547 F.3d 712, 717 (7th Cir. 2008); *Liu v. Ashcroft,* 380 F.3d 307, 311 (7th Cir. 2004).

We have no jurisdiction to review an order denying cancellation of removal except if constitutional claims or questions of law are raised. *See* 8 U.S.C. § 1252(a)(2)(D); *Jawad v. Holder,* 686 F.3d 400, 403–04 (7th Cir. 2012). Concerning the hardship factors, the government correctly responds that Delgado-Ramos has poorly disguised his disagreement with the Board's weighing of the hardship factors as a legal error. The presence of a legal question "is a matter of substance, not a function of labeling," *Ayeni v. Holder,* 617 F.3d 67, 70–71 (1st Cir. 2010), and Delgado-Ramos "cannot overcome the jurisdictional bar against reviewing discretionary decisions by cloaking [a] rationale he does not agree with as legal error," *Ishitiaq v. Holder,* 578 F.3d 712, 716 (7th Cir. 2009); *see Cruz-Moyaho v. Holder,* 703 F.3d 991, 997 (7th Cir. 2012); *Pawlowska v. Holder,* 623 F.3d 1138, 1142 (7th Cir. 2010). Thus, the petitioner's contention that the Board did not consider all of the hardship factors in the aggregate does not present a question of law, and we lack jurisdiction to review this portion of Delgado-Ramos's appeal concerning cancellation of removal. *See Cruz-Moyaho,* 703 F.3d at 997.

The only question really before us, then, is whether the IJ was required to postpone Delgado-Ramos's removal hearing. As the petitioner sees things, he was "denied due process because his ability to show hardship was crippled because he had to confront an adversarial proceeding with an attorney who admitted that he was unprepared to proceed and in fact admitted that he had not seen his client in a year and 1/2." Constitutional claims are reviewable, *see* 8 U.S.C. § 1252(a)(2)(D); *Marin-Garcia v. Holder,* 647 F.3d 666, 671 (7th Cir. 2011), but this one can be resolved quickly. Cancellation of removal is discretionary, *Munoz-Pacheco v. Holder,* 673 F.3d 741, 742 (7th Cir. 2012), and due-process protections do not extend to an alien's interest in obtaining discretionary relief, *see Delgado v. Holder,* 674 F.3d 759, 765 (7th Cir. 2012); *Moosa v. Holder,* 644 F.3d 380, 385 (7th Cir. 2011); *Lim v. Holder,* 710 F.3d 1074, 1076 (9th Cir. 2013); *Pinos-Gonzalez v. Mukasey,* 519 F.3d 436, 441 (8th Cir. 2008).

The IJ and the Board seem to have been operating under the assumption that granting a continuance is part and parcel of granting an attorney's motion to withdraw. This is not so. *See Gjeci v. Gonzales*, 451 F.3d 416, 421–23 (7th Cir. 2006) (noting IJ's broad discretion to grant motions to withdraw and for continuance but concluding that here, where it was obvious that petitioner did not understand consequences of counsel's withdrawal and counsel did not return key documents to petitioner for use during hearing, petitioner was denied fair hearing); *Mendez-Mendez v. Mukasey*, 525 F.3d 828, 830–31, 835 (9th Cir. 2008) (concluding that IJ did not violate petitioner's right to full and fair hearing even though, three days before removal hearing, IJ granted motion for substitution of counsel but denied motion for continuance); *Jean v. Gonzales,* 435 F.3d 475, 483–84 (4th Cir. 2006) (concluding that, because petitioner did not say what additional evidence she would have presented if granted continuance to obtain new counsel, IJ did not deny petitioner fair hearing by going forward with proceedings despite permitting counsel to withdraw six weeks before entry of final order of removal); *Ponce-Leiva v. Ashcroft,* 331 F.3d 369, 371–72, 375–76 (3d Cir. 2003) (concluding that petitioner's right to counsel was not violated when, after denying counsel's request for continuance two days earlier, counsel did not show up at removal hearing and proceedings went forward). We do wonder, however, why the IJ did not ask Delgado-Ramos or his wife to explain why their communication with attorney Vasquez broke down; having that information in the record would have aided our review.

A continuance would have been necessary only if forcing attorney Vasquez to represent Delgado-Ramos during the removal hearing would have violated the petitioner's statutory right to a fair hearing by denying him a reasonable opportunity to present evidence. *See* 8 U.S.C. § 1229a(b)(4)(B)*; Khan v. Mukasey,* 517 F.3d 513, 518 (7th Cir. 2008); *Hussain v. Keisler,* 505 F.3d 779, 781 (7th Cir. 2007). Although "adequacy of representation is an important factor in assuring that the statutory right to a fundamentally fair proceeding is respected," *Sanchez v. Keisler,* 505 F.3d 641, 648 (7th Cir, 2007), Delgado-Ramos cannot prevail without showing that granting a continuance likely would have affected the result of the hearing, *see Boci v. Gonzales,* 473 F.3d 762, 768 (7th Cir. 2007).

Delgado-Ramos says he would have developed 11 topics if granted a continuance, but he does not explain how evidence about these topics could have led to a favorable decision. Six of the topics relate to conditions in Mexico and are irrelevant to the hardship analysis because Delgado-Ramos and his wife both testified that she and their daughters would remain in the United States. For the same reason Delgado-Ramos's assertion that he would have presented evidence that his wife's divorce prohibits her from taking their eldest daughter out of the country is inconsequential. He also asserts that he would have presented testimony about his parents without stating if they are qualifying relatives (he

illegally entered the country with them, so presumably they would not be qualifying U.S. citizens or lawful permanent residents, *see* 8 U.S.C. §§ 1182(a)(6)(A)(I), 1229b(b)(1)(D).)

The only possibly relevant evidence that Delgado-Ramos says he would have presented is (1) "specific testimony or documentation" about how his wife's medical conditions will be exacerbated if he is removed and (2) a psychological report showing emotional and psychological hardship caused by separation. But it is not enough to suggest, generally, that this evidence, had he been allowed to present it, would have changed the IJ's decision denying cancellation of removal. *See Boadi v. Holder,* 706 F.3d 854, 859 (7th Cir. 2013). In the two years after his removal hearing, Delgado-Ramos did not provide the Board, and thus has not provided us, an affidavit *describing* that evidence. *See Rehman v. Gonzalez,* 441 F.3d 506, 509 (7th Cir. 2006); *Alimi v. Ashcroft,* 391 F.3d 888, 890–91 (7th Cir. 2004). Nor does he even hint at how the psychological report would demonstrate emotional and psychological hardship that is "substantially different from, or beyond, that which would normally be expected from the deportation of an alien with close family members here." *In re Monreal-Aguinaga,* 23 I&N Dec. 56, 65 (BIA 2001). And Delgado-Ramos, with his new lawyer, could have asked the Board to remand for the IJ to take additional evidence and engage in further factfinding. *See* 8 C.F.R. § 1003.1(d)(3)(iv); *Lin v. Holder,* 630 F.3d 536, 545 (7th Cir. 2010); *Figueras v. Holder,* 574 F.3d 434, 437–38 (7th Cir. 2009); *Duhaney v. Attorney Gen. of U.S.,* 621 F.3d 340, 346 (3d Cir. 2010); *Saleheen v. Holder,* 618 F.3d 957, 962 (8th Cir. 2010); *Witjaksono v. Holder,* 573 F.3d 968, 975–76 (10th Cir. 2009). He made no effort to do so and has not suggested that the BIA should have.

The portion of the petition raising constitutional claims and questions of law is **DENIED**. The remainder is **DISMISSED** for want of jurisdiction.