In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-1120

YAN QIN XIAO, also known as HUI CHING CHUANG,
and SUN CHENG JIANG,

*Petitioners,*

*v.*


MICHAEL B. MUKASEY, Attorney General
of the United States,

*Respondent.*

Petition for Review of an Order
of the Board of Immigration Appeals.
Nos. A97-385-000, A79-087-464

ARGUED SEPTEMBER 25, 2008—DECIDED OCTOBER 27, 2008


Before POSNER, FLAUM, and EVANS, *Circuit Judges*.

FLAUM, *Circuit Judge*. Petitioner Yan Qin Xiao and her
husband Sun Cheng Jiang seek review of a final order of
removal issued by the Board of Immigration Appeals
("BIA"). The BIA upheld the Immigration Judge's (IJ)
finding that petitioners' testimony was not credible
and denied their asylum claim. For the reasons explained
below, we affirm.

## I. Background

Xiao and Jiang are Chinese nationals. They were boyfriend and girlfriend in China. They were never married there.

Jiang entered the United States before Xiao. He applied for asylum in September 2002, after the one year filing deadline—which requires an applicant to file within one year of his last entry in the United States—expired. In his application, Jiang claimed that in 1998, government family planning officials forced his then-girlfriend Xiao to undergo an abortion, and he was fined for arguing with family planning officials about the forced abortion.

Xiao arrived in the United States at Miami International Airport on June 5, 2003. She stated to the immigration officer at the airport that she was fleeing China because the Chinese government sought to arrest her for the practice of Falun Gong. On June 9, 2003, in a credible fear interview with an asylum officer, Xiao again maintained that she fled China because she feared arrest because of her Falun Gong practice. Xiao did not mention a forced abortion on either occasion. Xiao was placed in removal proceedings. She conceded charges of removability and filed an application for asylum, withholding of removal, and protection under Article III of the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"). She later requested removal of her case to Immigration Court in Chicago, and this request was granted.

In 2005, Jiang and Xiao were married in Missouri. Xiao gave birth to their son during that year. Because he had not met the one-year deadline, Jiang abandoned his independent asylum claim and sought derivative asylum through Xiao's application.

Xiao had her individual merits hearing, which included Jiang's derivative claim, in Immigration Court on May 24, 2006. Xiao testified that she had met Jiang in April 1997 when they worked together at a furniture company, Hua Mei, in Guang Tou town in the Fujian Province of China. Xiao stated she stopped working at the furniture store in 1997.

Xiao stated that she became pregnant in January 1998 and that Jiang was the father. In March 1998, because Xiao was pregnant and unmarried in violation of China's family planning policies, she began hiding at the house of a friend, Zho Song Li, who lived in a different village. Xiao stated that she was unable to marry Jiang because they could not obtain a marriage license as Jiang was not registered locally in Guang Tou town, where he worked, or in the nearby village of Nan Tian, where he lived with his parents. He was not registered locally because his household registration remained in Shanghai where he attended college, and there was a delay in transferring it.

Xiao testified that while hiding at her friend Li's home, on June 28, 1998, five officials from the family planning office "charged into the house" and dragged her to the Guang Tou town health clinic where she underwent a forced abortion. She states that she was released from the hospital the next day. Xiao stated that she then went

to her parents' home in the Yang Qi village. Although she was not given an abortion certificate at the time of the abortion, Xiao stated that her parents obtained an abortion certification on July 8, 1998.

According to Xiao's testimony, her friend called her boyfriend Jiang after Xiao had gone to the Guang Tou town health clinic. Xiao indicated that Jiang was very upset and went to the family planning office in his own village and argued with family planning officials. After the argument, Xiao testified that Jiang received a fine notice of 10,000 RMB from the family planning office. Xiao stated that after the argument, the public security bureau was looking for Jiang, so he fled China.

Xiao testified that after the abortion, feeling sad and helpless, she turned to Falun Gong. She stated that she was introduced to Falun Gong by a friend, Qui Hong Gang. Xiao identified herself as a "beginner" practitioner and described Falun Gong as "a way to cultivate one's body and its part of Buddhism." Xiao stated that initially she practiced Falun Gong in her own home, but that she soon learned that her friend Qui had been arrested for Falun Gong practice. She testified he was arrested in September of 2001. She stated that public security officials later came to her house in an attempt to arrest her, but she was able to escape because her friend's mother called and told her she should hide. Xiao testified that she feared arrest, so she moved in with her aunt, who lived an hour and a half away. She testified that she avoided arrest for almost two years until her departure to the United States.

In 2003, Xiao testified, her mother and friends arranged for her transport to the United States by payment of a sum to a smuggler. Xiao admitted that her sister, Yan Duan Xiao, had obtained asylum in the United States in 2004 on a forced abortion claim, but that she did not know her sister had applied for asylum before her own arrival in the United States in June 2003.

Xiao admitted that she did not mention the forced abortion in the sworn statement she gave when she arrived at the Miami airport or at her credible fear interview a few days later. She claimed that she did not cite the forced abortion because she "felt shamed for her premarital pregnancy and felt humiliated by the abortion procedure."

Jiang also testified at the merits hearing. Jiang testified that he met Xiao in April 1997. He stated he was living with his parents in Nan Tian at that time. He had been a student in Shanghai and had graduated in 1994. He testified that he had not yet been able to transfer his registration back to Nan Tian or Guang Tou town, where he worked.

As to the forced abortion, Jiang stated that Xiao had been hiding at the house of a friend, and that the friend had called him when Xiao was taken away. Jiang stated that he was upset and went to argue with local family planning officials in Nan Tian (although his written application stated that he argued with family planning officials in Guang Tou town). He stated that on the same day local family planning officials delivered a 10,000 RMB fine for violation of China's birth control policy. The fine was

delivered by the village leader. Jiang said he showed the fine to his parents, who advised that he go into hiding the next morning.

The IJ issued his oral decision immediately following the merits hearing. The IJ found that petitioners were removable by clear and convincing evidence, and he denied their applications for relief and protection. The IJ found Xiao's and Jiang's testimony not credible and "not supported by specific detailed information that overcomes their lack of credibility." The IJ stated that he did not believe "that the respondents have established that the female respondent was forced to undergo an involuntary abortion in 1998 or that she fled China in 2003 because of her practice of Falun Gong." The IJ cited several specific reasons for the adverse credibility finding.

Xiao and Jiang appealed to the BIA. They claimed their testimony was credible, and that they qualified for asylum. On August 30, 2007, the BIA affirmed the IJ's denial of the application in a two page, single-spaced decision issued per curiam. First, the BIA determined that Xiao and Jiang had not contested the denial of withholding of removal and protection under CAT, meaning those claims were abandoned.

The BIA affirmed the denial of the asylum claim because the IJ's finding that Xiao and Jiang were not credible was not clearly erroneous. The BIA based its decision on three of the IJ's specific reasons for finding the petitioners incredible. First, the BIA affirmed because it concurred with the IJ's determination that Xiao's testimony was not credible because she had not disclosed to

the immigration officer or the asylum officer in Miami that a forced abortion was one reason for her flight from China. The BIA found: "[T]he husband's asylum application mentioned that he was applying for asylum based on China's coercive population control policy, but the lead respondent mentioned in her arrival statement and her credible fear interview that she feared persecution only due to her practice of Falun Gong." The BIA found Xiao's omission from her arrival statement and credible fear interview particularly significant because: (1) Jiang claimed in his asylum application that he suffered persecution because of her abortion; and (2) Xiao was in contact with Jiang by telephone and knew why he had applied for asylum.

The BIA also affirmed based on an inconsistency that the IJ found in testimony on Jiang's argument with family planning officials. The IJ did not believe that Jiang could have received the fine notice on the same day that the abortion took place. In his written application, Jiang said he argued with officials in Guang Tou town, but he testified at the merits hearing that he argued with officials in his village of Nan Tian and these local officials delivered the fine. The IJ found these inconsistencies weighed on petitioners' credibility. The IJ did not believe that if Jiang argued in Guang Tou town, as he originally stated, the family planning officials in Nan Tian would know of the argument soon enough to hand-deliver an immediate fine. The BIA agreed, stating it found "highly speculative that the lead respondent had an abortion in a different village from where her husband lived, but yet a family planning official hand delivered

notice of a fine to his house on the same day as the alleged abortion."

The BIA also found the submission of an abortion certificate into evidence adversely affected the petitioners' credibility. The IJ referenced the U.S. Department of State Country Reports and 2004 Profile of China, which suggest that abortion certificates are not issued for involuntary abortions but are issued after voluntary abortion only to allow time off for work. Xiao testified that, with the help of her parents, she was able to obtain a certificate. The IJ found this testimony incredible. The BIA agreed, stating: "The respondent's submission of an abortion certificate undermined the claim that any abortion was involuntary."

The BIA also found that even if Xiao's testimony about Falun Gong practice was found to be credible, it would not amount to a finding of well-founded fear of future persecution.

Petitioners appeal the BIA decision.

## II.  Analysis

An alien qualifies for asylum if he can demonstrate by *credible* evidence that he is a "refugee." 8 U.S.C. § 1158(b)(1)(A). The INA defines a refugee as a person who is "unable or unwilling to avail himself or herself of the protection of, that country [of nationality] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). If an alien establishes past persecution,

there is a rebuttable presumption of future persecution. To still deport the alien, the government must then show that country conditions have changed, meaning the past persecutors are no longer able to persecute. 8 C.F.R. § 1208.13(b)(1).

In the instant case, the lower courts found Xiao and Jiang not credible. An adverse credibility finding, if sustained, is fatal to an application for asylum. Xiao and Jiang argue that the BIA's adverse credibility determination is not supported by substantial evidence. Where, as here, the BIA does not expressly adopt the IJ's findings but rather issues its own opinion, we review the BIA's decision alone. *Moab v. Gonzales*, 500 F.3d 656, 659 (7th Cir. 2007).

We will uphold the BIA decision so long as it is supported by substantial evidence, and will overturn it "only if the record compels a contrary result." *Mabasa v. Gonzales*, 455 F.3d 740, 744 (7th Cir. 2006). Pre-Real ID Act credibility determinations must be based on "specific cogent reasons" that have a "legitimate nexus to the finding and that go to the heart of the applicant's claim." *Giday v. Gonzales*, 434 F.3d 543, 550 (7th Cir. 2006); *Capric v. Ashcroft*, 355 F.3d 1075, 1086 (7th Cir. 2004). The Court will not overturn adverse credibility determinations simply because the evidence might support an alternate finding. *Kllokoqi v. Gonzales*, 439 F.3d 336, 341 (7th Cir. 2005). Credibility determinations should be disturbed only under "extraordinary circumstances." *Shmyhelskyy v. Gonzales*, 477 F.3d 474, 479 (7th Cir. 2007).

The BIA based its decision upholding the adverse credibility finding of the IJ in part on Xiao's failure to

disclose her purported forced abortion during her airport arrival interview and her credible fear interview. According to Seventh Circuit case law, in making a determination, an adjudicator may properly consider statements made at an airport interview as long as they are reliable. *Jamal-Daoud v. Gonzales*, 403 F.3d 918, 923 (7th Cir. 2005); *Balogun v. Ashcroft*, 374 F.3d 492, 504-05 (7th Cir. 2004). In the instant case, the interviews were found to be reliable because there was a translator present and Xiao seems to have understood the questions.

Xiao claims that she did not mention forced abortion in Miami because she was ashamed that she had become pregnant before marriage. While this may be so, this explanation cannot overcome the high level of deference that we give to the lower courts. The BIA concluded that Xiao's inconsistent statements regarding her reasons for fleeing China adversely affect her credibility, and we cannot say that the record compels a contrary result. These inconsistencies are specific, cogent reasons to make an adverse credibility finding, and they go to the heart of the applicant's claim.

This single discrepancy is enough to find petitioners' entire testimony not credible. We have held that the "addition of new factual assertions that were not originally set forth can be viewed as inconsistencies providing substantial evidence that the applicant is not a reliable or truthful witness." *Oforji v. Ashcroft*, 354 F.3d 609, 614 (7th Cir. 2003); *see also Huang v. Gonzales*, 453 F.3d 942, 945-47 (7th Cir. 2006) (upholding adverse credibility determination based on a single significant inconsistency); *Chen v.*

*Gonzales*, 420 F.3d 707, 710 ("[s]ignificant discrepancies among different versions of an alien's statement are generally a permissible basis for an adverse credibility decision.").

In upholding the adverse credibility finding, the BIA cited other inconsistencies as well. It stated that the divergent statements about the circumstances under which Jiang argued with family planning officials and received a fine notice on the same day that the abortion took place adversely affected the petitioners' credibility. It also found incredible the submission of an abortion certificate into evidence when a country report indicated abortion certificates were only given for voluntary abortions. Xiao and Jiang claim that this finding "over-relied" on the State Department report. While we are careful to not treat State Department reports as "Holy Writ," *see Galina v. INS*, 213 F.3d 955, 959 (7th Cir. 2000), we defer to State Department reports in the absence of a contradictory, "highly credible independent source of expert knowledge*." Gramatikov v. INS*, 128 F.3d 619, 620 (7th Cir. 1997). Moreover, in another case this Court found credible a petitioner's testimony that she did not have an abortion certificate because the abortion was involuntary, and certificates are only given for voluntary abortions. *Lin v. Ashcroft*, 385 F.3d 748, 753-54 (7th Cir. 2004). In evaluating these reasons for the adverse credibility finding, we cannot say that the record compels a contrary result.

We uphold the adverse credibility finding. This finding is fatal to petitioners' entire asylum claim. We need not

address whether, absent an adverse credibility finding, petitioners' claims would have supported a well-founded fear of persecution.

## III. Conclusion

The petition for review of the BIA's order is hereby DENIED.