NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 27, 2009
Decided March 3, 2009

**Before**

RICHARD A. POSNER, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

Nos. 08-2103 & 08-2463

| | |
|---|---|
| DEDDY NOVARY and RATNA TRIJATNA,<br>    *Petitioners-Appellants*,<br><br>    *v.*<br><br>ERIC H. HOLDER, JR., Attorney General<br>of the United States,<br>    *Respondent-Appellee*. | Petitions for Review of Orders of the<br>Board of Immigration Appeals.<br><br>Nos. A95 557 139 & A97 118 193 |

**O R D E R**

Deddy Novary and Ratna Trijatna, petitioners in these cases, which we consolidate for decision, are natives and citizens of Indonesia. They left in 2001 shortly after religious and political violence erupted throughout the country. Both filed untimely applications for asylum and claimed they would be subjected to future persecution based on their political opinion and ethnicity. An Immigration Judge denied their requests for asylum, withholding of removal, and Convention Against Torture protection. The Board of Immigration Appeals affirmed both decisions, and Novary and Trijatna now petition for

review.  Because there is substantial evidence supporting the BIA's decisions, we deny both petitions for review.

## Background

Novary, a practicing Muslim, came to the United States in July 2001 after being threatened by members of Laskar Jihad.[*]  The group, formed to defend Indonesian Muslims amidst the political and religious chaos of the late 1990s, had attempted to recruit him to prepare their members to fight what it termed a Christian separatist movement.  Novary, though, disagreed with the group's violent tactics and refused to join.  But Laskar Jihad persisted, sending members to Novary's house to confront him on multiple occasions, and allegedly sending him a letter with the words "FIGHT or DIE" written in red ink.  He then decided to leave Indonesia, but Laskar Jihad continued to show up at his home, threatening to kill him if he returned as retribution for his refusal to join the group.

In April 2003 the Department of Homeland Security served Novary with a Notice to Appear, charging removability because he had overstayed his visa.  He conceded removability but applied for asylum, withholding of removal based on his political opinion, and CAT protection.  The IJ found Novary removable and denied his applications.  Novary appealed, and the BIA affirmed the decision.  The BIA first agreed with the IJ's finding that Novary's asylum application was time-barred because, although permitted to stay in the United States until July 2002, he did not file the application until August 2004.  It then determined that Novary had not shown past persecution because Laskar Jihad's threats were not sufficiently immediate or menacing in nature.  And the BIA found that Novary could not establish a clear probability of future persecution (or that it was more likely than not that he would be tortured) because violence in Indonesia had been decreasing, the government had taken steps to "diffuse future violence," and Novary's evidence did not "indicate specific harm against Muslims opposed to jihadist groups."

Trijatna's story arises out of the same chaotic period in the late 1990s.  As a child she had been continuously harassed because of her Chinese ethnicity.  On one occasion several neighborhood children pushed her to the ground because of her ethnicity, injuring her hand.  On another, while riding a public bus, six men shouted "we're here only for these

---

[*] Laskar Jihad, an extremist, Muslim Indonesian group, murdered and tortured tens of thousands of Indonesians between May 2000 and December 2001.  The group announced that it had disbanded in 2002, but it reportedly continued to train members between 2003 and 2006.  *See* Laskar Jihad, http://en.wikipedia.org/wiki/Laskar_Jihad (last visited Jan. 15, 2009).

dirty Chineses [sic]," robbing her and the other Chinese passengers. In the late 1990s anti-Chinese sentiment spiked, as native Indonesians yelled anti-Chinese slurs and destroyed Chinese-owned stores; Trijatna recalled Indonesians throwing rocks at the public van that took her to and from work. They also burned down her sister's church. Frightened by these "out-of-the-ordinary" events, Trijatna left Indonesia in 2001.

In August 2003 the Department of Homeland Security served her with a Notice to Appear, charging removability because she too had overstayed her visa. Trijatna conceded removability but renewed her applications for asylum, withholding of removal, and CAT protection. The IJ found her removable and denied her applications. Trijatna appealed, and the BIA affirmed the decision. The BIA first found "no merit" to Trijatna's assertion that the IJ violated her due process rights by not giving her sufficient opportunity to examine the U.S. Department of State's 2006 Annual Report on International Religious Freedom; the Board noted that she had more than one year's notice that it would be entered into the record. As for her asylum application, the Board agreed with the IJ that it was time-barred and that she could not meet any of the exceptions to the one-year filing deadline. The BIA next determined that Trijatna had not demonstrated past persecution because she did not show that the Indonesian government was unable or unwilling to control the robbers and rioters, or that the incidents amounted to a pattern of persecution. Finally, the BIA found that Trijatna could not establish a clear probability of future persecution (or that it was more likely than not that she would be tortured), especially given the fact that her mother and six siblings remained in Indonesia without incident.

**Analysis**

Where, as here, the BIA does not expressly adopt or supplement the IJ's opinion but rather issues its own opinions, we review the BIA's opinions alone. *Xiao v. Mukasey*, 547 F.3d 712, 717 (7th Cir. 2008). We will uphold the BIA's decisions so long as they are supported by substantial evidence, and will overturn them only if the record compels a contrary result. *Bakarian v. Mukasey*, 541 F.3d 775, 781 (7th Cir. 2008).

At the outset, we note that the BIA's findings regarding the untimeliness of both asylum applications are unreviewable in this court. *See* 8 U.S.C. § 1158(a)(3); *Kaharudin v. Gonzales*, 500 F.3d 619, 622-23 (7th Cir. 2007); *Ogayonne v. Mukasey*, 530 F.3d 514, 519 (7th Cir. 2008).

In light of the untimeliness of their asylum applications, petitioners are left to argue that the BIA erred in denying their requests for withholding of removal and CAT protection. To establish eligibility for withholding of removal, petitioners must show a "clear probability" of persecution on account of their "race, religion, nationality,

membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); *see Irasoc v. Mukasey*, 522 F.3d 727, 729-30 (7th Cir. 2008).

Novary contends that his support for the Indonesian government's efforts to oppose Islamic extremists triggered threats from Laskar Jihad—threats that, he insists, "left open the possibility of most immediate and menacing danger." But Laskar Jihad's unfulfilled threats against him were not sufficiently immediate or menacing to rise to the level of past persecution. *See, e.g.*, *Hernandez-Baena v. Gonzales*, 417 F.3d 720, 723 (7th Cir. 2005); *Boykov v. INS*, 109 F.3d 413, 416-17 (7th Cir. 1997). The group's threats, made on just two or three occasions, were never acted upon. And despite these threats, Novary felt secure enough in his safety to remain in the country for several months following his initial encounter with the group. Moreover, Novary has not shown that the threats were made "on account of" his political opinion. He does not claim, for instance, that he publicly participated in any political activities, and there is no evidence that Laskar Jihad was ever aware of his political leanings. Thus, he cannot show that Laskar Jihad's threats resulted from his support for the Indonesian government: the group threatened him not for any political opinion he might have held, but because he spurned their attempts to recruit him. *See INS v. Elias-Zacarias*, 502 U.S. 478, 482-83 (1992) (holding that refusal to join guerrilla group is itself not affirmative expression of political opinion). Because there is no link between the group's threats and any of the protected grounds listed in 8 U.S.C. § 1231(b)(3)(A), Novary cannot show past persecution.

As for Trijatna, she claims to have "suffered harm from belonging to an ethnic minority"—harm that the Indonesian government either condoned, or was helpless to prevent. But the encounters she described also fall far short of past persecution. We have held that the "acts of private citizens do not constitute persecution unless the government is complicit in those acts or is unable or unwilling to take steps to prevent them." *Chakir v. Gonzales*, 466 F.3d 563, 570 (7th Cir. 2006). Trijatna's mistreatment was inflicted initially by childhood playmates and later by anonymous Indonesians; unsurprisingly she presented no evidence of the government's complicity in either condoning or tolerating the attacks. *See Ingmantoro v. Mukasey*, 2008 WL 5246012, at *3 (7th Cir. Dec. 18, 2008) ("[T]he fact that the police did not prevent [the burning of a store] does not compel a finding that they generally were unable or unwilling to prevent it."). Because the harm she suffered was at the hands of private individuals and constituted, at most, harassment or discrimination, Trijatna cannot show past persecution.

Because petitioners cannot show past persecution, they must prove that it is more likely than not that they will suffer future persecution in Indonesia based on one or more of these protected grounds. *See Guardia v. Mukasey*, 526 F.3d 968, 971 (7th Cir. 2008); *Tariq v. Keisler*, 505 F.3d 650, 656 (7th Cir. 2007). Neither can do so. Novary testified that he did not

know whether Laskar Jihad was still looking for him and acknowledged that they likely were not.  He later admitted that his family had remained in Indonesia without incident.  Further, as noted by the BIA, the 2005 Country Reports on Human Rights Practices and the 2005 International Religious Freedom Report establish that the level of religious violence perpetrated by extremist groups in Indonesia had decreased.  *See generally Ingmantoro*, 2008 WL 5246012, at *4; *Kaharudin*, 500 F.3d at 623-24.  Similarly, as we recently pointed out, these reports have found no "pattern or practice of persecution [against Chinese Christians] tolerated by or perpetrated by the Indonesian government."  *Ingmantoro*, 2008 WL 5246012, at *4; *see also Kaharudin*, 500 F.3d at 623-24.  Trijatna contends that there is "substantial evidence on the record" that persecution against Chinese Christians "still takes place at appalling levels," yet she provides no authority for this statement.  The BIA's findings that Novary and Trijatna do not have a well-founded fear of future persecution is therefore supported by substantial evidence.  And because petitioners have not established that they qualify for withholding of removal, they cannot meet the more stringent test for CAT protection.  *See Aung v. Gonzales*, 495 F.3d 742, 747 (7th Cir. 2007).

Finally, Trijatna alone renews her argument that the IJ violated her due process rights to a fair hearing.  Trijatna argues that the IJ unconstitutionally refused her the opportunity to examine the 2006 International Religious Freedom Report, which she contends could have been used to show "changed political circumstances in Indonesia."  But as the BIA found, Trijatna had more than a year's notice that the 2006 report would be entered into the record and over two months to review the evidence.  When the IJ finally submitted the report into evidence, Trijatna made no objection.  In any event, she has not shown prejudice: she makes no attempt to show that the introduction of the evidence into the record in any way affected the outcome of the case.  *See Hamid v. Gonzales*, 417 F.3d 642, 645-46 (7th Cir. 2005).

## Conclusion

For these reasons, we DENY Novary and Trijatna's petitions for review.