**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued August 4, 2009
Decided October 19, 2009

**Before**

JOEL M. FLAUM, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 09-1062

| | |
|---|---|
| YOU KE CHEN, | Petition for Review of an Order of the |
| *Petitioner*, | Board of Immigration Appeals. |
| | |
| *v.* | No. A099-025-234 |
| | |
| ERIC H. HOLDER, JR., Attorney General | |
| of the United States, | |
| *Respondent*. | |

**O R D E R**

You Ke Chen, a Chinese national from Fujian province, sought asylum in the United States, alleging that family-planning officials threatened to sterilize him and forcibly abort his wife's pregnancy for violating China's one-child policy.  The Immigration Judge and the Board of Immigration Appeals denied his petition for asylum, concluding that Chen had not testified credibly—based, in part, on inconsistencies between testimony he gave at his credible-fear interview and at his administrative hearing, but also because Chen presented no evidence contradicting a State Department report stating that abortion certificates, like

the one he submitted, are not given for involuntary abortions.  We deny the petition for review.

Chen based his application for asylum on an incident with family-planning officials that he says sparked his flight from China.  In the application he said that the officials learned that his wife had become pregnant with a second child in violation of the family-planning policies and came looking for her.  His wife, though, fled before their arrival.  When they arrived, Chen said they kicked in the door and later slapped him twice when he denied knowing his wife's whereabouts.  He said the officials threatened to detain and sterilize him, but he managed to escape as he was being handcuffed.  Chen stated that he remained in hiding until a friend convinced him that fleeing to the United States was a way of avoiding capture and eventual sterilization.  The incident resisting family-planning officials, Chen claimed, qualified as past persecution and also supported a fear of future persecution were he returned to China.

Chen gave a new story, however, at his asylum hearing.  There he testified that his wife had undergone an abortion, and he claimed asylum as the spouse of a woman whose pregnancy had been aborted forcibly.  He testified that, after filing his asylum application, he received a letter from his wife stating that the family-planning officials had found her and aborted her pregnancy against her will.  As proof, Chen submitted the letter and a certificate stating that she had an abortion on March 29, 2006.

The IJ denied Chen's application for asylum in an oral decision.  Relying on inconsistencies in Chen's testimony and the record, the IJ concluded that Chen was not credible and had not established that his wife's pregnancy was aborted forcibly.  Alternatively, the IJ stated that even if he had found Chen credible, he still would have denied the application based on a lack of corroborating evidence.

Chen appealed to the BIA, which affirmed the IJ's decision in a separate order.  It found no clear error in the IJ's adverse credibility finding, and singled out what it deemed to be the most persuasive inconsistencies identified by the IJ.  For example, Chen bungled his son's age: at his April 2006 credible-fear interview, he said that his son was eighteen, but according to the birth certificate he submitted, his son was born in May 1999—which would have made him just shy of seven.  Additionally, Chen had testified inconsistently regarding the attack he suffered at the hands of officials: the BIA noted Chen's statement at his credible-fear interview that two officials attacked and threatened him with an "electric shock," but at the hearing, Chen stated that he was attacked by four or five people and he did not mention any electric shock.  The BIA also declined to credit the abortion certificate as proof that Chen's wife suffered an involuntary abortion, given that Chen did not refute

the State Department's report on country conditions in the record reflecting that such certificates are provided only for voluntary abortions.

Because the BIA issued a detailed order affirming, but not expressly adopting, the IJ's decision, we review the BIA's decision alone.[1] *Moab v. Gonzales*, 500 F.3d 656, 659 (7th Cir. 2007). An applicant's credibility is determined by the totality of the circumstances, including any oral or written statements (whether or not made under oath) and reports from the Department of State on country conditions. 8 U.S.C. § 1158(b)(1)(B)(iii). We review factual findings for substantial evidence, *Krishnapillai v. Holder*, 563 F.3d 606, 615 (7th Cir. 2009), overturning an agency's finding only if the evidence compels a contrary conclusion, *Capric v. Ashcroft*, 355 F.3d 1075, 1086 (7th Cir. 2004). And an adverse credibility determination, which we give substantial deference, will virtually doom an application for asylum. *Musollari v. Mukasey*, 545 F.3d 505, 508 (7th Cir. 2008).

Chen now contends that the adverse credibility finding is unsupported because, in his view, the IJ overemphasized minor factual discrepancies, such as those concerning his son's age and the number of officials who attacked him at his house. He notes that parents commonly misstate their children's ages and adds that "airport statements" are unreliable.

But Chen fails to recognize that the BIA responded to this argument and rejected it. The BIA acknowledged that those two inconsistencies alone might not have sustained the adverse credibility finding, but concluded that the cumulative impact of other discrepancies in the record were sufficient to uphold it. As for Chen's "airport statements," we note that he actually made his comment about the number of officials during his credible-fear interview, which took place two weeks after he had been detained, and he gave no reason to doubt the reliability of the interview beyond he was "in a bad mood" and "could not focus."

Chen also takes issue with the IJ's insistence on corroborating evidence. But the IJ's ruling—an alternative basis for his decision, we note—is not before us on review because the BIA issued a separate opinion that did not rely on the lack of corroboration. *See Korniejew v. Ashcroft*, 371 F.3d 377, 383 (7th Cir. 2004).

Chen next—again without referring to the BIA's decision—attacks the IJ for invoking *Huang v. Gonzales*, 453 F.3d 942 (7th Cir. 2006), as authority for the sweeping proposition

---

[1]Puzzlingly, Chen devotes the bulk of his brief to challenging the decision of the IJ, not the BIA's—even though the Board issued a separate order that was detailed and reasoned.

that abortion certificates issued by Chinese hospitals are evidence only of voluntary abortions. The line between a voluntary and a coerced abortion can be blurred, he argues, and here he has also submitted a letter from his wife describing how the abortion was forced.

Again, however, any shortcomings in the IJ's decision are irrelevant because the BIA in its separate opinion addressed the abortion certificate anew. It noted the State Department's 2006 profile of China stating that abortion certificates are not issued for involuntary abortions and pointed out that Chen did not contradict those reports. When there is no contradictory evidence in the record, we have upheld reliance on similar government reports. *See Xiao v. Mukasey*, 547 F.3d 712, 717-18 (7th Cir. 2008); *Huang*, 453 F.3d at 947. Additionally, Chen's reference to his wife's letter is unavailing; the BIA gave that letter little weight, questioning—as had the IJ—whether it was actually from his wife. Chen might disagree with the weight the BIA assigned to the letter, but we are far from convinced that the record compels a contrary result.

Last, Chen argues that the IJ ignored the abuse he personally experienced when the family-planning officials slapped him, threatened sterilization, and handcuffed him, and he contends that this experience qualifies as past persecution and also supports a fear of future persecution. But the IJ dismissed Chen's testimony as incredible, and Chen has pointed to no other evidence in the record for us to disturb this conclusion.

Accordingly, the petition is DENIED.