NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued October 6, 2010
Decided March 7, 2011

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

DIANE P. WOOD, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

No. 10-1760

| | | |
|---|---|---|
| YIN GUAN LIN, | | Petition for Review of an Order of the |
| | *Petitioner*, | Board of Immigration Appeals |
| | | |
| *v.* | | No. A097-329-858 |
| | | |
| ERIC H. HOLDER, JR., Attorney General | | |
| of the United States, | | |
| | *Respondent*. | |

## O R D E R

Yin Guan Lin, a native of Fujian province, China, petitions for review of an order of the Board of Immigration Appeals upholding the denial of his application for asylum. He contends that he faces likely persecution from his father's creditors if he is returned to China. An immigration judge denied Lin's application on the grounds that Lin lacked credible evidence of persecution and, furthermore, could not trace the alleged persecution to any cognizable ground for asylum. We conclude that the record supports these rulings and thus deny the petition for review.

# I

Lin arrived at Chicago's O'Hare International Airport without proper entry documents. There, after telling an immigration official that he feared returning to China, he was referred to an asylum officer for a credible-fear interview. At the interview, which was conducted in Fukienese with help from a translator, he spoke of an unpaid debt to a local government official named Sun Chen, whom he feared would harm him if he returned home. The asylum officer probed Lin for additional reasons he might fear returning, but Lin said only that he feared the legal consequences of leaving China without permission. According to his statements in the interview, his family was not politically active, and neither he nor any member of his family had been threatened, harmed, or detained by officials in China.

The Department of Homeland Security charged Lin with removability, and he requested asylum, see 8 U.S.C. § 1158, as well as other forms of relief not relevant to this petition. A year later Lin appeared before an immigration judge, admitted removability, and filed a new application for asylum. This time his story was different. Lin, the son of two dairy farmers, testified that his father had borrowed money from the local government and invested the capital in the family farm. When the farm failed and his father defaulted on the loan, debt collectors came looking for money. Lin described the ensuing run-ins with the collectors as traumatizing and violent, enough to cause his father to flee. In his father's absence, the collectors targeted Lin. Lin refused to disclose his father's whereabouts, and so officials from the Public Security Bureau detained him. Lin said that he remained in a detention facility for two months and was beaten on several occasions. Thanks to the "carelessness" of his captors, however, he managed to escape. He left China with the help of professional smugglers, known as "snakeheads," and entered the United States. At this point, Lin is supporting his claim for asylum solely on the ground that he has been persecuted because of his membership in a particular social group, namely, family members of known debtors.

The IJ pressed Lin on some of the finer points of his story, but he was not able to furnish many specifics. He could not identify where his father was, nor why his story had changed between his airport interview and his removal hearing. In addition to his testimony, Lin offered several documents to corroborate his claim that he was persecuted in China. He submitted a business license issued by the local government for a dairy farm and a payment demand from a local credit cooperative. He also introduced a letter, purportedly from his father, confirming the thrust of his story. This letter, however, attributed Lin's detention to an altercation with local officials that Lin had never mentioned. Lin also submitted a "detention certificate" reflecting the local Public Security Bureau's plan to detain him in 2003 for refusing to repay a loan.

The IJ found Lin's account of his last months in China unworthy of belief for several reasons. First, Lin gave two materially different accounts of his family's indebtedness. At his airport interview, Lin said that *he* had borrowed the money and denied having been detained or harmed while in China. But in his written application for asylum and again in his removal hearing, he said that it was his father who had incurred the debt and that his father's delinquency was the reason for his detention. The IJ dismissed Lin's attempt to explain the discrepancy as "nonsensical." Second, the IJ was troubled that Lin knew so little about his father's whereabouts, in light of the fact that Lin had just spoken with him by phone. The IJ also found "particularly confusing" Lin's fear of return, given his father's ability to relocate himself without trouble. Third, the IJ noted Lin's "exceptionally vague and confusing" testimony about his escape from custody.

The IJ also assigned little weight to Lin's documentary evidence, because she had no information about its authenticity or reliability. As for the purported letter from Lin's father, Lin could not explain why the letter contradicted his testimony that he was detained as a means of locating his father. According to the letter, it was not until Lin made a disparaging remark about capitalism that he became "the focus of the case." Moreover, the letter was not attached to an envelope, and so the record contained no objective proof of the letter's source.

The IJ also found that even if Lin's testimony was credited, it was still not enough to establish past persecution or a well-founded fear of future persecution. Lin was "very vague and unspecific" in describing the beating he received during his detention. And even if Lin could show persecution, the IJ continued, Lin had not demonstrated that the persecution was based on a statutorily protected ground. The IJ explained that family ties could be a basis for asylum only when there was a "protected ground tying the family membership to the basis for fear of persecution." Owing money, the IJ observed, was not a protected ground, and so Lin could not rely on his father's status as a debtor as the basis for group membership. The BIA adopted and affirmed the IJ's opinion, and so this court reviews the decision of the IJ as supplemented by the BIA. See *Irasoc v. Mukasey*, 522 F.3d 727, 729 (7th Cir. 2008). We review credibility determinations with deference under the familiar "substantial evidence" standard, reversing only if the evidence compels a contrary conclusion. See *Krishnapillai v. Holder*, 563 F.3d 606, 615 (7th Cir. 2009).

## II

Lin argues in his petition that the IJ failed to provide a cogent basis for the credibility ruling. But, shifting ground a bit, he urges that the IJ's underlying error was her failure to consider his testimony in light of "country conditions"— the current economic and political

circumstances in China. Had she done so, Lin says, she would have found his testimony believable.

The IJ did not err in her treatment of country conditions. Lin is correct that country conditions may inform the judge's assessment of credibility, see 8 U.S.C. § 1158(b)(1)(B)(iii); *Musollari v. Mukasey*, 545 F.3d 505, 509 (7th Cir. 2008), but he is wrong to suggest that country conditions *must* factor into every credibility analysis. The IJ had no need to rely on the subtle influence of country conditions when Lin's case was marred by such glaring inconsistencies. Lin gave two materially different accounts regarding his reasons for seeking asylum. No background facts about China were going to resolve those damaging discrepancies, which were enough by themselves to constitute substantial evidence supporting the IJ's conclusion. See *Xiao v. Mukasey*, 547 F.3d 712, 717 (7th Cir. 2008) (single material discrepancy between airport interview and removal hearing sufficient to support adverse credibility ruling); *Chatta v. Mukasey*, 523 F.3d 748, 752 (7th Cir. 2008) (material inconsistencies between airport interview and later testimony sufficient to support adverse credibility ruling); *Balogun v. Ashcroft*, 374 F.3d 492, 501 (7th Cir. 2004).

For the first time on appeal, Lin criticizes the IJ for buttressing the adverse credibility finding with information from his credible-fear interview at the airport. He contends that the IJ should have overlooked these statements, which he says he made out of fear of repercussions from Chinese authorities were they to learn about his assertions of past persecution. He also says that he was unfamiliar with America's judicial process and thus was unaware of the legal consequences that would attach to these statements. Because Lin failed to raise this argument before either the IJ or the BIA, this court may not consider it here. See *Ghani v. Holder*, 557 F.3d 836, 839 (7th Cir. 2009). We note as well that we see nothing in the record that suggests that the IJ should have disregarded this evidence. See *Jamal-Daoud v. Gonzales*, 403 F.3d 918, 923 (7th Cir. 2005) (listing factors); *Balogun*, 374 F.3d at 505.

Lin also attacks the IJ's decision on a number of other grounds. We touch on only those arguments that merit brief attention. First, Lin complains that the IJ should have given greater weight to his documentary evidence, including the letter from his father. But the IJ was justified in refusing to assign weight to that letter. Corroboration is required when an applicant's testimony cannot be accepted at face value. *Balogun*, 374 F.3d at 502. The IJ reasonably concluded that the letter did not corroborate Lin's story: the letter asserts that Lin's detention arose from an altercation between him and local authorities, contradicting Lin's testimony that he was detained solely on suspicion that he knew of his father's whereabouts.

Next, Lin contends that the IJ wrongly refused to consider the detention certificate on the ground that it was not authenticated. The IJ correctly observed that the document had

not been certified in accordance with immigration regulations. See 8 C.F.R. § 1287.6. And while failure to authenticate is not by itself reason to reject an otherwise relevant document, *Shtaro v. Gonzalez*, 435 F.3d 711, 717 (7th Cir. 2006), the IJ did not rely exclusively on that ground. The document failed to overcome the material discrepancies in Lin's testimony. See *Song Wang v. Keisler*, 505 F.3d 615, 622 (7th Cir. 2007) (adverse credibility finding proper where documentary evidence failed to resolve inconsistencies). It does not prove that Lin was detained; it reflects only that authorities had *planned* to detain him. Nor does the document reconcile the discrepancies at the heart of the credibility ruling (was it Lin or his father who took out the loan? was Lin really detained in China before he arrived in the United States?).

Finally, Lin argues that the IJ erred in concluding that he did not establish membership in a particular social group. Relying on *Lwin v. INS*, 144 F.3d 505, 512 (7th Cir. 1998), he defines his social group as family members of known Chinese debtors who fear punishment from creditors for outstanding debt. But this alleged group does not satisfy the criteria under the statute. To qualify for social-group membership, an applicant must establish that he belongs to a group whose common characteristic "cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." See *Benitez Ramos v. Holder*, 589 F.3d 426, 428 (7th Cir. 2009) (internal citation omitted). It is true that the family unit can constitute a social group, see *Hassan v. Holder*, 571 F.3d 631, 641-42 (7th Cir. 2009); *Mema v. Gonzales*, 474 F.3d 412, 416-17 (7th Cir. 2007), but Lin has not demonstrated that his family ties motivated the alleged persecution. Rather, the record shows that creditors, supported by local officials, detained Lin as a means of tracking down his father. Any harm that Lin faced arose from a personal dispute between his father and his father's creditors. Debtors who fear creditors do not qualify for social-group membership. See *Gatimi v. Holder*, 578 F.3d 611, 616 (7th Cir. 2009); *Jan v. Holder*, 576 F.3d 455, 458-59 (7th Cir. 2009); *Cruz-Funez v. Gonzales*, 406 F.3d 1187, 1191-92 (10th Cir. 2005).

The petition for review is DENIED.