# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2929

_____

| | | |
|---|---|---|
| Tabassum Saleheen, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| | * | Petition for Review of an |
| v. | * | Order of the Board of |
| | * | Immigration Appeals. |
| Eric H. Holder, Jr., Attorney | * | |
| General of the United States, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: June 14, 2010
Filed:   August 27, 2010

_____

Before LOKEN, ARNOLD, and GRUENDER, Circuit Judges.

_____

ARNOLD, Circuit Judge.

Tabassum Saleheen, a native and citizen of Bangladesh, appeals an order of the Board of Immigration Appeals denying her application for cancellation of removal. We reject Ms. Saleheen's contention that the BIA engaged in improper factfinding and we dismiss the remainder of her appeal for lack of subject matter jurisdiction.

## I.

Ms. Saleheen married Serajus Saleheen, who is also from Bangladesh. Shortly after their marriage, Mr. Saleheen entered the United States on an H-1B visa for nonimmigrant temporary specialty workers and Ms. Saleheen followed on an H-4 visa

for nonimmigrant spouses of specialty workers. While they were living in Colorado, Mr. Saleheen began to abuse Ms. Saleheen physically and emotionally. Ms. Saleheen gave birth to their daughter, Saneesha, at the end of 2000. In the spring of 2002, Mr. Saleheen told his wife to take a vacation to Bangladesh with Saneesha; after leaving for the trip, she discovered that the immigration paperwork necessary for her to re-enter the United States was missing from her luggage. Mr. Saleheen assured her that he would get the papers to her but did not send them. Soon after Ms. Saleheen arrived in Bangladesh, her husband had her served with a Bangladeshi affidavit of divorce. Ms. Saleheen initially challenged the divorce proceeding, contending that Mr. Saleheen had not met the requirements for divorce under Islamic law in Bangladesh. She eventually dropped her challenge, and the Bangladeshi divorce was granted in September, 2002; documents in the record indicate that Ms. Saleheen may have appealed the divorce.

While still in Bangladesh, Ms. Saleheen filed for divorce in Colorado state court, which refused to recognize the Bangladeshi divorce because, *inter alia*, it concluded that the Bangladeshi child-custody rules violated public policy. Ms. Saleheen re-entered the United States in 2003 on an H-4 visa that authorized her to stay for a year. In 2005, Mr. Saleheen became a lawful permanent resident of the United States, and Ms. Saleheen applied for permanent residency as his dependent spouse; she was denied because of the Bangladeshi divorce and her failure to show that she and Mr. Saleheen currently had a bona fide relationship.

A month later, Ms. Saleheen was charged with having overstayed her visa and was placed in removal proceedings. *See* 8 U.S.C. § 1227(a)(1)(B). She admitted removability but applied for cancellation of removal based on Mr. Saleheen having abused her. *See* 8 U.S.C. § 1229b(b)(2)(A)(i)(II). Five months after her Colorado divorce was granted, Ms. Saleheen married a student who had entered the country on a temporary F-1 student visa. Two weeks later, the IJ held a hearing on Ms. Saleheen's cancellation claim, in which she testified that Mr. Saleheen had abused

her from December, 1999, until she left for Bangladesh in the spring of 2002. After the IJ determined that she did not meet the statutory requirements to be considered for cancellation of removal, Ms. Saleheen appealed to the BIA. The BIA dismissed the appeal: Though it concluded that she did, in fact, meet the statutory requirements, the BIA decided her circumstances did not warrant granting her that discretionary relief. Ms. Saleheen filed a petition for review.

## II.

In order to be considered for "[s]pecial rule" cancellation for "battered spouse," Ms. Saleheen had to meet certain statutory requirements by showing, *inter alia*, that she had "been battered or subjected to extreme cruelty by a spouse ... who is or was a lawful permanent resident." 8 U.S.C. § 1229b(b)(2)(A)(i)(II). The BIA concluded, contrary to what the IJ decided, that the statute's plain language did not require that the abusive spouse be a permanent resident when the abuse occurred: According to the BIA, the statutory provision requiring proof that the abusive spouse "is or was a lawful permanent resident" covers a situation, like Ms. Saleheen's, "where an alien is abused by an individual who is not a legal permanent resident [at the time], but who is a legal permanent resident ... at the time the abused alien seeks relief."

The BIA nonetheless decided that Ms. Saleheen was not "deserving of special rule cancellation of removal as a matter of discretion." Section § 1229b(b) provides that the attorney general "may" grant cancellation of removal to an eligible individual and thus the attorney general's decision whether to grant or deny relief is discretionary. *See Guled v. Mukasey*, 515 F.3d 872, 880 (8th Cir. 2008). In its decision, the BIA first set out "positive equities weighing in [Ms. Saleheen's] favor," noting that except for her trip to Bangladesh, she had lived in this country for about eight years, she had an eight-year-old child who was a United States citizen, she had no criminal record, and she had been employed since 2004. The BIA also described as "negative factors" her ground of removability (overstaying her visa) and her receipt of food stamps for two years. The BIA then listed "additional factors" that it deemed

relevant because Ms. Saleheen was seeking relief "as the battered spouse of a lawful permanent resident." The BIA observed that she last had contact with Mr. Saleheen in 2002, "except for a few phone calls," and found that their marriage "ended for all intents and purposes" the same year; and it stated that Ms. Saleheen remarried in September, 2007, and thus was "no longer dependent on [her abuser] for status" or in an abusive relationship with him. The BIA concluded that "given the underlying purpose of the battered spouse provisions ... to enable non-citizens to leave their abusive citizen or permanent resident spouses who may use the threat of deportation or sponsorship of an immigration benefit to maintain control over them, ... on balance, the respondent has not demonstrated that she is entitled to cancellation of removal under section [§ 1229b(b)(2)] ... as a matter of discretion considering the length of time since the relationship ended, the divorce, and the re-marriage."

An applicable statute provides that "no court shall have jurisdiction to review ... any judgment regarding the granting of relief under section ... 1229b," except that an appropriate court of appeals may review "constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(B)(i), (a)(2)(D). We have no jurisdiction to review the "ultimately discretionary denial of cancellation of removal," but we may review "nondiscretionary determinations underlying [that decision], such as the predicate legal question whether the [BIA] properly applied the law to the facts in determining an individual's eligibility." *Sanchez-Velasco v. Holder*, 593 F.3d 733, 735 (8th Cir. 2010) (internal quotation marks and citations omitted).

Here the BIA plainly stated that it was exercising its discretion in denying relief to Ms. Saleheen, and if that is so, we have no jurisdiction unless Ms. Saleheen has raised colorable legal or constitutional claims. In order to be colorable, "a claim must have some possible validity." A claim is not colorable "if it is immaterial and made solely for the purpose of obtaining jurisdiction or is wholly insubstantial and frivolous." *Garcia-Aguillon v. Mukasey*, 524 F.3d 848, 850 (8th Cir. 2008) (internal quotation marks and citations omitted).

-4-

### III.

Ms. Saleheen first contends that we have jurisdiction to review the denial of relief even though the BIA "labeled" its decision as discretionary, because it committed a legal error by imposing two new eligibility requirements: The purported new requirements bar relief "if the time between the battery or extreme cruelty and the disposition of the application for relief is too great" and "where the victim remarries during the pendency of his or her removal proceedings." But we don't think that Ms. Saleheen may create jurisdiction merely by characterizing the BIA's list of reasons for not favorably exercising its discretion as "legislating" a new class of aliens who are *per se* ineligible for special rule consideration. *Cf. Garcia-Aguillon*, 524 F.3d at 850. And because we conclude that the BIA did not create a new class of ineligible aliens, we need not address Ms. Saleheen's contention that the BIA lacks the authority to do so.

We also believe that Ms. Saleheen's argument that the BIA was acting "*ultra vires*" by "legislating" new eligibility criteria fails to recognize the roles of Congress and the attorney general under § 1229b(b)(2)(A). Congress chose to enact requirements that an alien must meet before being considered for special cancellation of removal. *See id.* Once those minimal standards are met, Congress granted the attorney general the discretion to decide whether to grant relief. Nothing in the statute forbids the agency from considering particular factual matters in deciding whether relief is appropriate. Nor did Congress set out particular factual matters that must be considered, as it has done in other contexts. We have described the attorney general's power to grant cancellation of removal as "roughly equivalent to executive clemency, over which the executive branch has unfettered discretion." *Guled*, 515 F.3d at 880 (citing *INS v. Yueh-Shaio Yang*, 519 U.S. 26, 30 (1996)).

Here the BIA simply explained its rationale for denying relief to Ms. Saleheen, and Ms. Saleheen cannot create a colorable claim by arguing that it somehow exceeded its authority by relying on those considerations. As the Supreme Court

stated in *Yueh-Shaio Yang*, when addressing another immigration law under which satisfaction of the statutory requirements "establishes only the alien's *eligibility*" for discretionary relief, "[s]uch eligibility in no way limits the considerations that may guide the Attorney General in exercising her discretion to determine who, among those eligible, will be accorded grace." *Id.* at 31 (emphasis in original). We reject Ms. Saleheen's attempt to manufacture jurisdiction by recasting the BIA's reasons for its discretionary decision as *ultra vires* conduct. *Cf. Garcia-Aguillon*, 524 F.3d at 849-50.

We also lack jurisdiction over Ms. Saleheen's contention that the BIA committed a legal error by "overlooking and mischaracterizing" what she describes as "crucial evidence in the record." In making this argument, Ms. Saleheen again challenges the manner in which the BIA exercised its discretion, without raising a colorable legal claim.

IV.

Ms. Saleheen next contends that the BIA violated its own regulations by making factual findings. *See* 8 C.F.R. § 1003.1(d)(3)(iv). Because she raises a question of law, we conclude that we have jurisdiction to decide the issue. We review the matter *de novo*, giving due deference to the agency's interpretation of its own regulations. *Olmsted v. Holder*, 588 F.3d 556, 558 (8th Cir. 2009). The relevant regulation provides that the BIA reviews an IJ's factual findings for clear error and, except for taking administrative notice of facts that are commonly known, the BIA "will not engage in factfinding in the course of deciding appeals" but may remand to the IJ if additional factfinding is necessary. 8 C.F.R. § 1003.1(d)(3)(i), (iv). The BIA has interpreted the regulation to permit it to rely on uncontested facts in the record. *See A-S-B-*, 24 I. & N. Dec. 493, 498 (2008).

We see no merit in Ms. Saleheen's assertion that the BIA engaged in improper factfinding when it stated that she was "no longer in an abusive relationship with

Mr. Saleheen." The IJ found that the Saleheens' relationship ended over five years earlier and that the abuse ended at the same time as the relationship. The BIA's statement that Ms. Saleheen was no longer in an abusive relationship was no more than a restatement of the IJ's findings. And given the IJ's finding that no abuse or physical contact had occurred in over five years, we see no merit in Ms. Saleheen's contention that the BIA was required to remand to determine whether circumstances had changed after the IJ's decision.

Ms. Saleheen also maintains that the BIA improperly engaged in factfinding by stating that after she was divorced and had remarried, she was no longer dependent on her abuser for her immigration status. We disagree. As we have already said, the BIA explained in its decision that the relevant statute was intended to "enable non-citizens to leave ... [abusive] spouses who may use the threat of deportation or sponsorship of an immigration benefit to maintain control over them." We therefore believe that, in context, the BIA's remark that Ms. Saleheen's immigration status was no longer dependent on her abuser meant that Ms. Saleheen – after her divorce and remarriage – was no longer eligible for derivative immigration benefits afforded to her as Mr. Saleheen's spouse, and thus Mr. Saleheen could not wield power over her by threatening to undermine her eligibility for those benefits. We agree with the attorney general that the BIA was not factfinding – it was commenting on the legal effects of their divorce.

## V.

We reject Ms. Saleheen's contention that the BIA engaged in inappropriate factfinding, and we dismiss the remainder of the appeal for lack of jurisdiction.

_____