**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-1522
_____

SAMUEL CARDENAS,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS
(Agency No. A 201-953-491)
Immigration Judge: Adam Panopoulos
_____

Argued March 3, 2026
_____

Before: SHWARTZ, BIBAS, and PHIPPS, <u>Circuit Judges</u>.

(Filed: March 31, 2026)
_____

Zoey Jones
Edward M. McCarthey

Brooklyn Defender Services
177 Livingston Street, 7th Floor
Brooklyn, NY 11201

Andrew D. Silverman
Harmann P. Singh [ARGUED]
Orrick Herrington & Sutcliffe
51 W 52nd Street
New York, NY 10019

Counsel for Petitioner

Alanna Thanh Duong [ARGUED]
Brooke M. Maurer
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

Counsel for Respondent

Joseph Craig Lawlor, Esq.

Haynes & Boone
30 Rockefeller Center
26th Floor
New York, NY 10112

Counsel for Amicus

2

———————

OPINION

———————

SHWARTZ, <u>Circuit Judge</u>.

Samuel Cardenas petitions for review of the Board of Immigration Appeals ("BIA") decision dismissing his appeal of the Immigration Judge's ("IJ") order denying his applications for cancellation of removal and adjustment of status under (1) the special rule for battered children, 8 U.S.C. § 1229b(b)(2)(A)(i)(II), ("special rule cancellation"), and (2) the provision for non-lawful permanent residents, <u>id.</u> § 1229b(b)(1), ("cancellation of removal"). Because special rule cancellation is available to applicants who were abused by an individual who was a legal permanent resident ("LPR") or citizen, and Cardenas' abuser was an LPR or citizen at the time he sought relief, we will grant the petition and remand for further proceedings for consideration of Cardenas's request for special rule cancellation. However, we will deny the petition to review his request for cancellation of removal because substantial evidence supports the IJ's conclusion that Cardenas failed to show his mother would suffer exceptional or extremely unusual hardship due to his removal.

I

A

Cardenas is a native and citizen of the Dominican Republic who first entered the United States without

3

authorization in 1999 when he was fourteen. He lived in the United States with his mother, Maria Perdomo, his brother, and his stepfather, Francisco Escolastico, who were all in the United States without authorization. Escolastico abused Cardenas and Perdomo. Among other things, Escolastico violently beat Perdomo daily, sealed the windows in their home so she could not look outside, and forcibly searched her body for evidence of infidelity. Escolastico also beat Cardenas when he attempted to defend his mother. During this time, Cardenas was Perdomo's primary emotional support, and she credits Cardenas with saving her life. Cardenas left home when he was seventeen or eighteen years old to escape Escolastico's abuse, but he continued to support Perdomo emotionally and financially.

Escolastico repeatedly threatened to report Perdomo to immigration authorities to have her deported, so she left the relationship only after she obtained LPR status. Escolastico continued to terrorize Perdomo and forced her to sponsor his LPR application. Eventually, Escolastico obtained LPR status and, thereafter, threatened Cardenas on one occasion.[1]

After Perdomo ended her relationship with Escolastico, she was diagnosed with Major Depressive Disorder and Post Traumatic Stress Disorder ("PTSD") and attempted suicide at least three times. Throughout, Cardenas emotionally supported her and once called 911 to save her life. Perdomo experiences guilt for exposing Cardenas to abuse and for his lack of immigration status, and she suffers cognitive distortions

---

[1] There is also some evidence in the record that Escolastico became a citizen before Cardenas filed for special rule cancellation.

as a symptom of her depression and PTSD.  Cardenas remains her main source of emotional support.

B

In 2019, the Government charged Cardenas as inadmissible for not possessing a valid entry document.[2] Cardenas conceded the charge of removability but applied for cancellation of removal and adjustment of status under (1) special rule cancellation, and (2) cancellation of removal.  Both types of cancellation require showing that removal would result in hardship on qualifying relatives.  8 U.S.C. § 1229b(b)(1)(D) & (b)(2)(A)(v).  To show hardship, Cardenas presented a psychoanalyst who stated that the abuse Perdomo experienced was the worst she had ever heard and that Perdomo would be at a greater risk of suicide if Cardenas were deported because she would experience more cognitive distortions and increased depression.  The IJ also heard evidence that Perdomo was separated from Escolastico, remarried, drew support from her children and other family members, was fully employed, and no longer feared Escolastico.

The IJ denied Cardenas's applications.  First, the IJ relied on Matter of L-L-P-, 28 I. & N. Dec. 241 (BIA 2021), to conclude that Escolastico abused Cardenas but Cardenas was not eligible for special rule cancellation because Escolastico was not an LPR at the time of the abuse.  Second, the IJ concluded that Cardenas was not entitled to cancellation of

---

[2] Cardenas was arrested while traveling in Mexico and involuntarily paroled into the United States to face criminal prosecution.  All criminal charges against him were dropped.

5

removal because he did not show Perdomo would experience greater hardship than would be expected when a close family member is deported. The IJ acknowledged Perdomo's suicide attempts but emphasized that Perdomo would receive adequate mental health support from her husband and other family members, is working full time, and no longer fears Escolastico.

In a split decision, the BIA ruled that the IJ did not clearly err. The BIA unanimously held that, to be eligible for special rule cancellation, the abuser must be a citizen or LPR at the time of abuse, and Escolastico lacked that status when the abuse occurred. As to cancellation of removal, the BIA majority agreed with the IJ that Perdomo's mental decompensation would not be exceptional or unusually extreme if Cardenas were deported, while the dissenter opined that Cardenas's deportation would cause "exceptional and extremely unusual hardship to his mother, given the extreme nature of the abuse she experienced in the past." CAR 11.

Cardenas petitions for review of each ruling.

II[3]

A

As relevant here, under special rule cancellation, the Attorney General may cancel removal of an inadmissible or

---

[3] The IJ had jurisdiction under 8 U.S.C. § 1229a(a) and 8 C.F.R. § 1208.2, the BIA had jurisdiction under 8 U.S.C. § 1103 and 8 C.F.R. § 1003.1(b)(3), and we have jurisdiction under 8 U.S.C. § 1252(a)(1), (2)(D). When the BIA issues its

deportable alien who "demonstrates that . . . the alien has been battered or subjected to extreme cruelty by a . . . parent[4] who is or was" an LPR.[5]  8 U.S.C. § 1229b(b)(2)(A)(i)(II).  We must decide whether "is or was" refers to the abuser's

own opinion and does not "simply adopt the opinion of the IJ, we review . . . the BIA's decision as the final agency decision." Nelson v. Att'y Gen., 685 F.3d 318, 320-21 (3d Cir. 2012) (citations omitted).  "[T]o the extent the BIA deferred to or adopted the IJ's reasoning, we also look to and consider the decision of the IJ on those points."  Id. at 321 (citing Chavarria v. Gonzalez, 446 F.3d 508, 515 (3d Cir. 2006)).  We review legal determinations of the BIA de novo.  Sesay v. Att'y Gen., 787 F.3d 215, 220 (3d Cir. 2015).

[4] An applicant who was abused by a stepparent can also satisfy this condition.  8 U.S.C. § 1101(b)(1)(B) (defining "child" to include "a stepchild. . . provided the child had not reached the age of eighteen years at the time the marriage creating the status of stepchild occurred"); Medina-Morales v. Ashcroft, 371 F.3d 520, 531 (9th Cir. 2004) (explaining that the statute "does not distinguish among stepchildren and natural children").  Escolastico was Cardenas's stepfather at the time of the abuse, through his then-valid marriage to Perdomo.

[5] Special rule cancellation also requires a showing that "the removal would result in extreme hardship to the alien, the alien's child, or the alien's parent."  8 U.S.C. § 1229b(b)(2)(A)(v).

7

immigration status when the abuse occurred or at some other time.[6]

"As with any question of statutory interpretation, our analysis begins with the plain language of the statute." Jimenez v. Quarterman, 555 U.S. 113, 118 (2009) (citation omitted). "The people are entitled to rely on the law as written, without fearing that courts might disregard its plain terms based on some extratextual consideration," so "when the meaning of the statute's terms is plain, our job is at an end." Bostock v. Clayton County, 590 U.S. 644, 674 (2020). A

---

[6] Although the parties agree that we need not consider whether the clause of 8 U.S.C. § 1229b(b)(2)(A)(i)(II) that provides that cancellation of removal is available if the alien "has been battered or subjected to extreme cruelty" means that the alien must show that the abuse was occurring when he sought relief or whether it only applies to an alien subjected to past abuse, we address that question here. The text demonstrates that the statute applies to applicants who were being abused when relief was sought as well as to those whose abuse ended before the applicant sought special rule cancellation because the phrase "has been" denotes "an act, state, or condition that is now completed or continues up to the present." See Mejia-Castanon v. Att'y Gen., 931 F.3d 224, 233 n.10 (3d Cir. 2019) (quoting Chicago Manual of Style § 5.132, at 268 (17th ed. 2017)); see also Hewitt v. United States, 606 U.S. 419, 427-28 (2025) (discussing present-perfect tense). By using "has been" in this context, Congress was referring to the immutable fact that the alien was abused at some point in time. The use of "is or was" elsewhere in the provision refers to the immigration status of the abuser, which can change.

statute's use of the present-tense verb "is" generally includes the future as well as the present. Abdul-Akbar v. McKelvie, 239 F.3d 307, 313 (3d Cir. 2001) (en banc); see also 1 U.S.C. § 1 ("In determining the meaning of any Act of Congress, unless the context indicates otherwise . . . words used in the present tense include the future as well as the present."). The word "was" refers to the past. United States v. Atiyeh, 402 F.3d 354, 364 (3d Cir. 2005). Read in context, the statute addresses the act of battery by a particular actor, here, the parent. It then addresses the actor's status, and given the use of the phrase "is or was," it covers actors who at some point before the application for relief was adjudicated had LPR status, and thus applies even if the abuser lacked that status at the time of the abuse.[7] If Congress meant to limit the statute's coverage to only abusers who were LPRs at the time of abuse, it would have used language such as "who was then" an LPR. Instead, Congress chose language that captures actors who committed abuse either (1) while they were an LPR and subsequently retained or lost their immigration status, or (2) gained LPR status after the abuse. Accordingly, the statutory language that "the alien has been battered or subjected to extreme cruelty by a . . . parent who is or was a lawful permanent resident" demonstrates that relief is not limited to cases where abusers were LPRs when the abuse occurred, but also applies to cases where abusers were LPRs at some point before relief for special rule cancellation is adjudicated. 8 U.S.C. § 1229b(b)(2)(A)(i)(II); see Saleheen v. Holder, 618 F.3d 957, 960 (8th Cir. 2010) (observing that, "[a]ccording to

---

[7] An alien may also move to amend any application for relief that is pending if, after the initial application has been filed, the abuser obtains LPR status. See 8 U.S.C. § 1229b(b)(2)(A)(i)(II).

the BIA, the [requirement] that the abusive [parent] 'is or was a lawful permanent resident' [applies] . . . 'where an alien is abused by an individual who is not [an LPR at the time of the abuse], but who is  . . . at the time the abused alien seeks relief'"); In re Tabassum Saleheen, A097 967 736, at 4-5 (BIA July 20, 2009).[8]

Arriving at the opposite conclusion, the BIA here relied on Matter of L-L-P-, which held that the special cancellation statute "is susceptible to more than one interpretation" and thus "ambiguous" because "[t]he word 'is' in these provisions could be interpreted to mean that the [abuser] held United States citizenship or [LPR] status at the time of the . . . abuse, or . . . at the time the application for cancellation of removal was filed." 28 I. & N. Dec. at 243. This conclusion violates basic rules of grammar because "is" is a present-tense, not past-tense, verb. Nielsen v. Preap, 586 U.S. 392, 408 (2019) (quoting A. Scalia & B. Garner, Reading Law: The

---

[8] The Court of Appeals for the Eighth Circuit did not assess the BIA's conclusion "that the statute's plain language did not require that the abusive spouse be [an LPR] when the abuse occurred," Saleheen, 618 F.3d at 960, but the BIA in Saleheen concluded that the purpose and legislative history of § 1229b(b)(2)(A)(i)(II)—which emphasized "that Congress intended to afford broad protection to aliens in abusive relationships"—supported "the most straightforward reading of the statutory language . . . i.e., that it applies to all aliens whose qualifying spouse [or parent] is [an LPR] or United States citizen at the time of the application, without regard to whether the spouse [or parent] acquired the status after the abuse." A097 967 736, at 4-5.

Interpretation of Legal Texts 140 (2012)) (noting that "'rules of grammar govern' statutory interpretation 'unless they contradict legislative intent or purpose'"). L-L-P's interpretation also renders "or was" superfluous. There would be no need for the disjunctive "is or was" if the statute were concerned only with the abuser's status at the time of the abuse. See Duncan v. Walker, 533 U.S. 167, 174 (2001) (citation omitted) ("It is our duty 'to give effect, if possible, to every clause and word of a statute.'"). Because "is" unambiguously refers to the present, which under the statute captures the period up until the application for relief is adjudicated, the BIA's interpretation does not comport with the plain text, which includes abusers who became LPRs between the time the abuse occurred and when the application for relief is decided. Bostock, 590 U.S. at 674.[9]

---

[9] The BIA's reliance on materials beyond the statute's text introduced additional errors. First, the BIA interpreted a parenthetical in a neighboring provision, which provides that an applicant may be "(. . . the parent of a child of a United States citizen and the child has been battered or subjected to extreme cruelty by such citizen parent)," to conclude that "Congress used the phrase 'by such citizen parent' to explicitly tie the abusive parent's citizenship status to the past abuse, indicating that the abusive parent must have possessed United States citizenship status at the time the abuse took place." L-L-P-, 28 I. & N. Dec. at 244. The BIA's interpretation of the phrase "has been battered or subjected to extreme cruelty" relied on the mistaken premise that the "present perfect tense" denotes that the abuse had been completed. Id. The present perfect tense can refer either to acts that "continue[] up to the present" or past events. Mejia-Castanon, 931 F.3d at 233 n.10

11

Because Cardenas's abuser was an LPR or citizen when Cardenas applied for relief, he satisfies the requirement that he "has been battered or subjected to extreme cruelty by a . . . parent who is or was a lawful permanent resident." 8 U.S.C. § 1229b(b)(2)(A)(i)(II). We will therefore remand to the BIA for it to remand to the IJ to determine whether Cardenas has satisfied § 1229b(b)(2)'s other conditions[10] and whether to

(quoting Chicago Manual of Style § 5.132, at 268 (17th ed. 2017)). In the clause of the statute, the focus is on the petitioner and whether he has been "battered or subject to extreme cruelty" and not the timing of the "parent['s]" immigration status. The only statutory language relevant to the timing of the parent's immigration status are the verbs "is or was." Second, because the statue is unambiguous, the BIA should not have relied on legislative history. Bostock, 590 U.S. at 674 ("[I]t is ultimately the provisions of those legislative commands rather than the principal concerns of our legislators by which we are governed." (internal quotation marks and citations omitted)).

[10] One condition for receiving special rule cancellation is that "removal would result in extreme hardship to the alien, the alien's child, or the alien's parent." 8 U.S.C. § 1229b(b)(2)(A)(v). While the BIA assessed whether "removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence" for cancellation of removal under § 1292b(b)(1)(D), it did not assess the separate, differently-worded hardship condition under § 1229b(b)(2)(A)(v). Compare 8 U.S.C. § 1229b(b)(1)(D) ("removal would result in exceptional and extremely unusual hardship to the alien's

12

grant or deny this discretionary relief.  See Saleheen, 618 F.3d at 960 ("Section 1229b(b) provides that the attorney general 'may' grant cancellation of removal to an eligible individual and thus the attorney general's decision whether to grant or deny relief is discretionary.").

B[11]

We next review the BIA's decision that Cardenas failed to show that a qualifying family member would suffer "exceptional and extremely unusual hardship," which is required to obtain cancellation of removal.  8 U.S.C. § 1229b(b)(1)(D).  To meet this standard, the alien must show that the hardship on the family member is "substantially beyond the ordinary hardship that would be expected when a close family member leaves this country."  Wilkinson v. Att'y Gen., 131 F.4th 134, 142 (3d Cir. 2025) (quotations and citations omitted).  "In evaluating the degree of hardship, courts and the agency consider the 'ages, health, and

---

spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence"), with id. § 1229b(b)(2)(A)(v) ("removal would result in extreme hardship to the alien, the alien's child, or the alien's parent").

[11] "[T]he substantial-evidence standard governs review of a hardship determination in a cancellation-of-removal proceeding."  Wilkinson v. Att'y Gen., 131 F.4th 134, 142 (3d Cir. 2025).  Under the deferential substantial-evidence standard, we uphold the agency's findings "unless the evidence not only supports a contrary conclusion but compels it."  Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir. 2001).

circumstances' of qualifying relatives." Id. at 143 (quoting In re Monreal-Aguinaga, 23 I. & N. Dec. 56, 63 (BIA 2001)).

Substantial evidence supports the BIA's conclusion that Perdomo would not suffer "exceptional and extremely unusual hardship" if Cardenas were deported. 8 U.S.C. § 1229b(b)(1)(D). As an initial matter, the IJ's and BIA's opinions contradict Cardenas's argument that they failed to consider evidence that Perdomo would be at an increased risk of suicide if Cardenas were deported as both the IJ and BIA discussed her history of suicidality and the expert report's prediction that Perdomo was at risk of mental decompensation. The IJ recognized Perdomo's trauma but concluded that she (1) would receive adequate mental health support from her husband, children, and other family members, (2) works full time, and (3) no longer fears Escolastico. The BIA reasonably concluded that these changed circumstances mitigated the mental health consequences Cardenas's deportation would cause. We do not minimize the severity of Perdomo's terrible experience, but the evidence in the record does not compel a conclusion other than that reached by the BIA—that Cardenas's removal would not cause Perdomo "extremely unusual hardship." Wilkinson, 131 F.4th at 144-45.

III

For the foregoing reasons, we will grant the petition in part, deny it in part, and remand.

14